IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA

| | |
|---|---|
| SATYAJIT SANYAL, Pro Se ) | |
|       Plaintiff ) | |
| ) | |
| Vs. )Case # 1:14-cv-00960-JCC-TCB | |
| ) | |
| TOYOTA MOTOR NORTH AMERICA, ) | |
| INC., TOYOTA MOTOR SALES, ) | |
| U.S.A, INC., TOYOTA MOTOR ) | |
| MANUFACTURING, CALIFORNIA, ) | |
| INC., TOYOTA MOTOR ) | |
| MANUFACTURING, KENTUCKY, INC. ) | |
| TOYOTA MOTOR ENGINEERING & ) | |
| MANUFACTURING NORTH AMERICA,) | |
| INC. ) | |
|       Defendants ) | |

FILED MAILROOM
OCT 17 2014
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## **AMENDED COMPLAINT**
## **(JURY TRIAL DEMANDED)**

COMES NOW the Plaintiff, SATYAJIT SANYAL, by Pro Se, by submitting this amended complaint per Court Order of September 30, 2014, moves for judgment against the Defendants, TOYOTA MOTOR NORTH AMERICA, INC. (TMA), TOYOTA MOTOR SALES, U.S.A, INC. (TMS), TOYOTA MOTOR MANUFACTURING, CALIFORNIA, INC. (TMMCA), TOYOTA MOTOR MANUFACTURING, KENTUCKY, INC. (TMMK), TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC. (TEMA) on the grounds and in the amount as hereinafter set forth:

1. The Plaintiff, adult, resident of Virginia, purchased New TOYOTA CAMRY (Model year 2011; VIN Number 4T1BF3EK9BU658720) equipped with Airbags, on November 19th, 2010 from authorized Toyota Dealer located in Virginia.

2. The Plaintiff demands Jury Trial for this case, which was also requested in his Original Complaint filed In The Circuit Court Of Fairfax County, Virginia and assigned Complaint # CL-2014-0008601, that was moved by the defendants to this Court and has been assigned Case # 1:14-cv-00960-JCC-TCB.

3. On July 10th, 2012, at approximately 10:20 AM, the Plaintiff was driving to work, in the above-mentioned TOYOTA CAMRY (Virginia Vehicle Plate Number: XGK 4066) Northeast on Herndon Parkway in Herndon, Fairfax County, Virginia, during which the Toyota Camry crashed head-on with fixed object (a tree) and the Plaintiff faced life-threatening and permanent physical and personal injuries in this incident due to failure in deployment of any of the driver side AIRBAGS despite the significant damaging impact and strong forces involved in the front-end vehicle collision with a fixed object, causing significant damages to the Toyota Camry 2011 and the Plaintiff. Post-crash photographs of the Toyota Camry 2011 are enclosed herein as Exhibit 1.

4. The following were reported on July 10th, 2012 in the Police Crash report number 201202821, enclosed herein as Exhibit 2, documented by the investigating Police Officer:

    a. The Toyota Camry was being driven by the Plaintiff.

    b. The Toyota Camry, single vehicle ran off the road eastbound on the right, travelled on the sidewalk for a short distance before veering to the left, crossing the westbound traffic lanes and struck a tree off the roadway.

    c. There was significant Front End damage to the vehicle.

    d. Airbags were not deployed in this head-on collision with fixed object, in this case a tree.

    e. The motor had stalled out, the doors of the vehicle were locked.

    f. The Plaintiff appeared to have lost consciousness.

    g. Police Officers utilized a haligan bar to provide emergency, potentially Life-Saving entry into the vehicle to not only access the Plaintiff, but provide airflow into the vehicle on a near 90 degree day.

    h. Once access was gained and fresh air entered the vehicle, the Plaintiff gained a low degree of consciousness but was unable to speak.

    i. Rescue Personnel arrived on scene, screened the Plaintiff for a diabetic emergency with negative results but did note significantly diminished response from the left side of his body

    j. The Plaintiff was transported by Medic Ambulance to Reston Hospital

5. After the vehicle crash, the law enforcement officials rescued the Plaintiff from the accident scene, transported and admitted the Plaintiff to the Critical Care Unit of Reston Hospital on July 10th, 2012 till July 12th, 2012, considered by the Hospital as treatment for 3 days.

6. Upon information and belief, TOYOTA MOTOR MANUFACTURING, KENTUCKY, INC., is an Active, Kentucky Corporation with principal address 25 Atlantic Avenue, Erlanger, KY – 41018 and a Registered Agent at C T CORPORATION SYSTEM, 306 W Main St, Suite 512, Frankfort, KY – 40601.

7. According to the Toyota Operations 2014 brochure enclosed herein as Exhibit 3, TMMK was established in 1986, TMMK is Toyota's largest manufacturing facility in North America, builds the Avalon, Avalon Hybrid, Camry, Camry Hybrid, and Venza. In addition, TMMK builds 4-cylinder and V6 engines and powertrain parts.

8. The Plaintiff ASSERTS that based on the decode of VIN 4T1BF3EK9BU658720, enclosed herein as Exhibit 4, the 2011 Toyota Camry purchased by the Plaintiff was manufactured in the United States by Toyota Motor Manufacturing Kentucky, Inc. (TMMK) in its facility located at Georgetown, Kentucky. VIN details are attached herein as Exhibit 4. Therefore, Plaintiff ASSERTS Cause(s) of action against the

defendant TMMK, liable for manufacturing, design and assembly defects of the Toyota Camry 2011 purchased by the Plaintiff.

9. Upon information and belief, TOYOTA MOTOR NORTH AMERICA, INC. (TMA), is an Active, California Corporation with principal address 19001 South Western Avenue, Torrance, CA – 90501 and a Registered Agent for Service of Process at C T CORPORATION SYSTEM, 818 West Seventh St, 2nd Fl, Los Angeles, CA – 90017.

10. According to the Toyota Operations 2014 brochure enclosed herein as Exhibit 3, TMA began operations in 1996, TMA is the holding company for Toyota's U.S. sales and manufacturing operating units, with offices in New York City and Washington, D.C. Operating functions of TMA include government and regulatory affairs, energy, environment, economic research, philanthropy, and corporate communications.

11. The Plaintiff ASSERTS that the Toyota Camry 2011 purchased by the Plaintiff, failed to comply with delivering the Airbags Safety features per the US Government and regulatory requirements, and therefore, based on the operating functions, Plaintiff ASSERTS Cause(s) of action against the defendant TMA, liable for any warranties for Government and Regulatory affairs for fulfilling guidelines and compliance per US Safety standards and requirements, together with liabilities for manufacturing, design and assembly defects for the Toyota Camry 2011 purchased by the Plaintiff.

12. Upon information and belief, TOYOTA MOTOR SALES, U.S.A, INC. (TMS), is an Active, California Corporation with principal address 19001 South Western Avenue, Torrance, CA – 90501 and a Registered Agent for Service of Process at C T CORPORATION SYSTEM, 818 West Seventh St, 2nd Fl, Los Angeles, CA – 90017.

13. According to the Toyota Operations 2014 brochure enclosed herein as Exhibit 3, TMS was established in 1957, TMS is headquartered in Torrance, California. TMS is the U. S. sales, marketing, distribution, and customer service arm for Toyota, Lexus, and Scion in the 49 continental states. Through a network of 1,500 dealers, more than 2 million vehicles were sold in 2013. TMS Regional Offices coordinate vehicle sales, parts,

and service for dealers in 10 regions, with two additional regions served by private distributors.

14. The Plaintiff ASSERTS that the Toyota Camry 2011 purchased by the Plaintiff, failed to deliver the Airbags Safety features and therefore, based on the operating functions, Plaintiff ASSERTS Cause (s) of action against defendant TMS, liable for any warranties for sales, marketing and distribution of safe automobiles that were claimed to comply with the US Safety standards and requirements, together with liabilities for manufacturing, design and assembly defects for the Toyota Camry 2011 purchased by the Plaintiff.

15. Upon information and belief, TOYOTA MOTOR MANUFACTURING, CALIFORNIA, INC. (TMMCA), is an Active, California Corporation with principal address 19001 South Western Avenue, Torrance, CA – 90501 and a Registered Agent for Service of Process at C T CORPORATION SYSTEM, 818 West Seventh St, 2nd Fl, Los Angeles, CA – 90017.

16. According to the Toyota Operations 2014 brochure enclosed herein as Exhibit 3, TMMCA is involved in manufacturing activities of Catalytic Converters, Steering Columns, Race Engines, Race Engine Components, Axle Components.

17. The Plaintiff ASSERTS that Steering Columns embraces the components associated with the Airbags deployment, and since the Airbags failed to deploy for the Toyota Camry 2011 purchased by the Plaintiff and therefore, based on the operating functions, Plaintiff ASSERTS Cause (s) of action against defendant TMMCA, liable for any warranties for components built, manufactured or assembled in its facility, claimed to deliver the US Safety standards and requirements, together with liabilities for manufacturing, design and assembly defects for the Toyota Camry 2011.

18. Upon information and belief, TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC. (TEMA), is an Active, Kentucky Corporation with principal address 25 Atlantic Avenue,

Erlanger, KY – 41018 and a Registered Agent at C T CORPORATION SYSTEM, 306 W Main St, Suite 512, Frankfort, KY – 40601.

19. According to the Toyota Operations 2014 brochure enclosed herein as Exhibit 3, TEMA is headquartered in Erlanger, Kentucky. TEMA has major operations in Arizona, California and Michigan. TEMA Consolidated in 2006. TEMA is responsible for Toyota's engineering design and development, R&D, and manufacturing activities in the U.S., Mexico, and Canada.

20. The Plaintiff ASSERTS that improper engineering design and development, R&D and their involvement in manufacturing activities directly contributed to the failure of Airbags deployment for the Toyota Camry 2011 purchased by the Plaintiff and therefore, based on the operating functions, Plaintiff ASSERTS Cause (s) of action against defendant TEMA, liable for any warranties for engineering design and development, R&D, and manufacturing activities claimed to comply and deliver US Safety standards and requirements, together with liabilities for manufacturing, design and assembly defects for the Toyota Camry 2011 purchased by the Plaintiff.

21. The post-crash photographs of the Plaintiff's vehicle Toyota Camry 2011, enclosed herein as Exhibit 1, clearly displays the reported significant Front End damage on the Driver side of the vehicle and in-line with the steering wheel of the car.

22. The substantial Circumstantial Evidences documented in the Police Crash Report and post-crash Photographs of the vehicle Toyota Camry, demonstrates significant Probable cause that due to the failure in deployment of any of the driver side Airbags in response to the damaging impact and strong forces caused upon crashing of the Toyota Camry with the tree, caused the Plaintiff's head and face to crash into the Steering wheel of the car, causing Facial and Scalp Contusions, aggravating post-traumatic Seizure activity, loss of consciousness and an life-threatening accident incident.

23. As a direct and proximate result thereof, Plaintiff alleges that he suffered serious and permanent head injuries aggravating Seizure activities and is dependent on costly prescription medications, has to undergo costly diagnostic testing such as EEG and CT Scans, preventative care and medical treatment for life-time or till cured.

24. The Plaintiff is an Information Technology Professional, a profession of knowledge, thinking and continuous learning for attaining new skills and updates, all of which imposes substantial challenges and demands on the brain and body to perform day-to-day work and retaining information and the job in a highly competitive, challenging, ever changing and evolving profession. An Information Technology professional is generally expected to have an overall healthy brain and body that can perform quickly, can handle time-sensitive, fast-paced and demanding situations at work.

25. In February 2014, upon medical tests, CT Scans and further diagnosis, significant increases in the prevailing dosage of Plaintiff's prescription medications were recommended by the Doctor.

26. The physical injuries suffered by the Plaintiff during the vehicle crash accident incident, intake of prescribed medications for treating the injuries, aggravated conditions and side effects caused by the injuries and medications, are substantially deteriorating Plaintiff's ability to place challenging demands on his brain and body. As a proximate result, the Plaintiff alleges that he is compelled to lookout for jobs that are less demanding on his brain and body. These types of jobs do not pay wages equivalent to Plaintiff's wages earned at the time of the incident in 2012.

27. As a proximate result of the Plaintiff's personal injuries, physical injuries, damages and harms caused to health during this vehicle crash incident, to stay in active work-life, the Plaintiff has to work at reduced wages, thus reducing his earning capacity as well. As a proximate result thereof, the Plaintiff alleges that he is unable to meet his financial obligations for paying existing debt, pay for ever increasing cost of living

expenses, home mortgage, monthly home association fees, car loan, utilities bills, other personal expenses, past, present and future bills for hospital, doctors, related health care, and life care in an effort to lead a normal healthy lifestyle and be cured of the aforementioned physical and personal injuries, damages and harms caused to health, aggravated in part or whole by this life-threatening vehicle crash incident.

28. Medical expenses of over $25,000 were claimed towards hospitalization in the Critical Care Unit from July 10th, 2012 till July 12th, 2012. Noteworthy would be the medical expenses for a 3 day treatment.

29. Vehicle damage repair expenses of over $11,000 were claimed and paid by Plaintiff's Car insurance provider towards repair of the Toyota Camry after the vehicle crash incident of July 10th, 2012. An expense of $11,000 for repairing a Toyota Camry, model year 2011 involved in a crash incident is a noteworthy indication of the substantial degree of damages the vehicle incurred.

30. Expenses of over $11,000 were claimed towards recent diagnostic testing including CT Scans and medical care fees for a single hospital visit in February 2014. This would be a noteworthy indicator of average expenses for diagnostic testing and related medical care for maintaining the Plaintiff's health.

31. The Plaintiff's complaints and allegations in aforesaid statements are the proximate causes or proximate contributing causes for his Physical and Personal injuries and financial distress caused by the vehicle crash accident incidence.

32. The allegations contained herein are asserted against the Defendants jointly, severally, or in the alternative and arise, at least in part, out of the same series of transactions, involvement, actions and occurrences relating to Defendants manufacture, assemble, use, procure, outsource, design, research & development, engineering, marketing, distribution, sale, export and importation of the parts used in the TOYOTA CAMRY

(Model year 2011; VIN Number 4T1BF3EK9BU658720), purchased by the plaintiff from authorized Toyota Dealer located in Virginia.

33. The Financial Interest Disclosure Statements submitted by the Defendants attorney for TMMK, TMA, TMS, TMMCA and TEMA, enclosed herein as Exhibit 5, are few indicators of the complexity, ambiguous, discrete and dispersed business entities setup of Toyota in the United States contributing to the present-day reality of the Japanese brand named TOYOTA.

34. The Plaintiff asserts that all the named Defendants are direct contributors to the present-day reality of the Japanese brand named TOYOTA, alleged to be deliberately presenting a single trademark identity of TOYOTA to earn advantages and avail confidence of the US consumers and presenting to the US legal system an ambiguous, discrete and dispersed business entities structure to seek benefits and endeavor to elude from responsibility and/or delay justice by pursuing defenses through the forbearance process of law wherever accessible, thereby victimizing and positioning to the least, several hundred thousand to millions of US consumers to harm's way by failing to build, design, sell and deliver automobiles that are affirmed to comply with the minimum guidelines of the US safety standards as in this case, the Toyota Camry 2011 purchased by the Plaintiff.

35. The Plaintiff asserts that his physical and personal injuries, pain, suffering, aggravating health conditions, damages to health, loss of life's many enjoyments, emotional distress and harms caused due to the failure of airbags to deploy during a deadly motor vehicle crash accident incidence of July 10th, 2012 remain immense and irrevocable.

36. **COUNT ONE – NEGLIGENCE**
   I. Plaintiff hereby adopts each and every paragraph preceding Count One of this Complaint and makes the same a part of this Count, Asserted against Defendants TMMK, TMA, TMS, TMMCA and TEMA;

   II. At the time of the design and manufacture, and at the time of the incident, the 2011 Toyota Camry vehicle was defective and

unreasonably dangerous. The Defendants knew, or in the exercise of reasonably available knowledge, should have known that this vehicle was defective and unreasonably dangerous;

III. At the time the 2011 Toyota Camry vehicle left their control, Defendants knew, or in light of reasonably available knowledge, should have known of the dangers for which recovery is sought;

IV. The Defendants placed the 2011 Toyota Camry vehicle into the stream of commerce, at a time the vehicle was in a defective condition and unreasonably dangerous for its intended use;

V. At all times material hereto, the Defendants had a duty to use reasonable care in the manner in which it manufactured, designed, assembled and/or modified, the subject vehicle;

VI. The Defendants breached its statutory and case law duty of care by the negligent Design or negligent manufacture, assembling and/or modifying of the subject vehicle as follows:
   a. Negligent failure to properly design and/or manufacture the 2011 Toyota Camry to incorporate a reasonable level of crash worthiness to protect the driver during accidents;

   b. Negligent failure to design and/or manufacture the 2011 Toyota Camry vehicle, specifically, the airbags system and its safety support infrastructure, to eliminate an unreasonable risk of injury to the vehicle's driver from crash injuries during an accident;

   c. Negligent failure to properly design and/ or implement appropriate test protocol and procedures to adequately test the 2011 Toyota Camry for design and/ or manufacturing defects in the 2011 Toyota Camry and particularly those associated with the intended use of the vehicle;

d. Negligent failure to take meaningful corrective actions and measures to safeguard against defects in the 2011 Toyota Camry vehicle;

e. Negligently, willfully and recklessly placing into interstate commerce a dangerous and defective vehicle, the 2011 Toyota Camry, which was likely to cause injury to users like the Plaintiff;

f. Other acts of negligence, defects, and unreasonably dangerous characteristics that may be developed during discovery.

VII. As a direct result of the Defendants' TMMK, TMA, TMS, TMMCA and TEMA negligences, Plaintiff sustained serious injuries.

37. **COUNT TWO - STRICT LIABILITY**

I. Plaintiff hereby adopt each and every paragraph preceding Count Two of this Complaint and make the same a part of this Count Asserted against Defendants TMMK, TMA, TMS, TMMCA and TEMA;

II. The Defendants are strictly liable for placing into the stream of commerce the 2011 Toyota Camry vehicle which was unreasonably dangerous and defective in design, manufacture, lack of warnings, instructions and safety. This vehicle was designed, manufactured, assembled, distributed, marketed and sold to the general public like the Plaintiff.

III. At the time of the accident incident in question, the 2011 Toyota Camry vehicle was Defective and unreasonably dangerous in the following particulars:
   a. The 2011 Toyota Camry vehicle was defectively designed;

   b. The 2011 Toyota Camry vehicle was defectively manufactured;

   c. The 2011 Toyota Camry vehicle was defective by virtue of lack of warnings;

    d. The 2011 Toyota Camry vehicle was defective by the Defendants' failure to adequately inspect and test the 2011 Toyota Camry vehicle model;

    e. The 2011 Toyota Camry vehicle was inherently dangerous for its intended use.

IV. The Defendants knew, or should have known that the vehicle was inherently dangerous and had failed in similar fashion many times previously. By failing to undertake meaningful remedial action and by failing to remove the vehicle from the market, the Defendants displayed a callous and willful disregard for the rights of the Plaintiff. The Defendants subscribe to a skewed accounting precept that any financial exposure from serious injury and death from the use of the subject vehicle is not outweighed by the cost of a global remediation of the dangers inherent in the intended use of the vehicle.

**38. COUNT THREE - BREACH OF WARRANTY**

    I. Plaintiff adopts each and every allegation set forth in the paragraphs preceding Count Three and makes the same a part of this Count Asserted against Defendants TMMK, TMA, TMS, TMMCA and TEMA;

    II. Defendants warranted that the 2011 Toyota Camry vehicle was free of defects, was of merchantable quality and, was fit for the purpose and manner intended;

    III. Plaintiff relied upon Defendants' express and implied warranties;

    IV. It was reasonable to expect that the Plaintiff would use and depend upon the safe operation of the 2011 Toyota Camry vehicle;

    V.    Defendants wantonly and recklessly violated their warranties by designing, manufacturing, supplying, distributing, selling, marketing, assembling the 2011 Toyota Camry vehicle which was not merchantable or fit for its intended use;

## 39. COUNT FOUR - CAUSATION AND DAMAGES

The Plaintiff readopt, re-allege and incorporate by reference all of the above allegations contained in this Complaint and would allege that the actions of the Defendants, Asserted against TMMK, TMA, TMS, TMMCA and TEMA, herein as complained above were the proximate cause or proximate contributing cause of the injuries of the Plaintiff.

## 40. COUNT FIVE - WANTON, RECKLESS, MALACIOUS OR INTENTIONALLY WRONGFUL CONDUCT IN GROSS DISREGARD FOR OTHERS' RIGHTS

    I.    Plaintiff adopts each and every allegation set forth in the paragraphs preceding Count Five and makes the same a part of this Count, Asserted against Defendants TMMK, TMA, TMS, TMMCA and TEMA;

    II.    The Defendants have engaged in a pattern and practice of manufacturing designing, and selling 2011 Toyota Camry vehicles and others at a time they knew or should have known that this vehicle posed grave dangers to the user;

    III.    The Defendants have known of the defective and dangerous nature of the vehicle for a protracted period of time;

    IV.    The Defendants have known that this dangerous vehicle, as well as other models, have injured or killed an inordinate number of users.

V. Unfortunately, Defendants have failed to undertake meaningful action to remedy the dangers of the vehicle and have failed to remove the vehicle from the market. Such conduct, or lack of care, was wanton, reckless, malicious, and in gross disregard of the rights of the Plaintiff.

VI. The Defendants' TMMK, TMA, TMS, TMMCA and TEMA' conduct entitles the Plaintiff to punitive damages.

### 41. DAMAGES

The Plaintiff has suffered both pecuniary and non-pecuniary losses and damages including:

a. Medical, therapeutic, diagnostic testing and related expenses, past, present and future;

b. Lost Wages in past, continuing and future;

c. Permanent loss of wage earning capacity equivalent to time of incident in 2012;

d. Physical pain and emotional suffering, past, present and future.

e. Permanent damage to health and the resulting anguish, hardship and expenses;

f. Future life care, assisted living and transportation expenses;

g. Other damages as allowed;

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands judgment against the Defendants TOYOTA MOTOR NORTH AMERICA, INC. (TMA), TOYOTA MOTOR SALES, U.S.A, INC. (TMS), TOYOTA MOTOR MANUFACTURING, CALIFORNIA, INC. (TMMCA), TOYOTA MOTOR MANUFACTURING, KENTUCKY, INC. (TMMK), TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC. (TEMA), jointly and severally in the consolidated sum of TWENTY-FIVE MILLION AND NO/100 DOLLARS ($25,000,000.00) towards Personal Injury;

Permanent loss of earning capacity; Aggravating health conditions and resulting health damages; Past, continuing and future lost wages; Personal distress; Future Life care, assisted living and transportation expenses; Past, continuing and future medical expenses; and HIS costs and other damages as allowed by Law.

RESPECTFULLY SUBMITTED, this 16th day of OCTOBER 2014.

By: _(signature) 10/16/2014_

SATYAJIT SANYAL, Pro Se

**Mailing Address for Plaintiff:**

11654 Plaza America Drive, #622,

Reston, Virginia - 20190

Telephone: 551-208-4891 (Cell)

**Physical Address (Not to be used for sending any Mails or Commuications to the Plaintiff):**

12905 Centre Park Circle, Unit 412,

Herndon, Virginia – 20190

Copy of Plaintiff's Amended Complaint for Case 1:14-cv-00960-JCC-TCB will be mailed to Defendant's Attorney on record:

Joel A. Dewey

DLA Piper LLP (US)

The Marbury Building

6225 Smith Avenue

Baltimore, Maryland – 21209