FILED

2015 MAY 20  P 1: 25

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA

SATYAJIT SANYAL, Pro Se              )
                          Plaintiff    )
                                       )
Vs.                                    ) Case # 1:14-cv-00960-JCC-TCB
                                       )
Toyota Motor North America, Inc., et al)
                        Defendants      )

**PLAINTIFF'S MEMORANDUM, STATEMENTS AND RESPONSES INCLUDING OPPOSITION TO DEFENDANT'S TOYOTA MOTOR SALES,U.S.A. INC, TOYOTA MOTOR MANUFACTURING KENTUCKY, INC AND TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC'S JOINT STIPULATION OF UNCONTESTED FACTS**

Plaintiff, SATYAJIT SANYAL, by Pro Se, hereby submits his Memorandum, Statements and Responses including opposition to Defendants Memo titled "Joint Stipulation of Uncontested Facts" for reasons stated hereinafter.

On 18th May, 2015, the Plaintiff received by USPS First Class mail an envelope containing a copy of Defendants Memo titled "Joint Stipulation of Uncontested Facts." The envelope included a cover letter specifying "The parties are required to file a joint Stipulation of Uncontested Facts by next Thursday May 21, 2015....."

As of the filing of this document with the Court, the Plaintiff has not agreed or consented to the filing of information contained in the defendant's memo titled "Joint Stipulation of Uncontested Facts" nor did he have any conversations with the Defendants or their Attorneys with regards to the

Statements in memo referenced as "Joint Stipulation of Uncontested Facts".

Based on the Plaintiff's experiences had during previous conversations with the defendants Attorneys, at this time, the Plaintiff does not feel comfortable with having conversations out of the Court room. Therefore, the Plaintiff submits his written responses and opposition to the Defendants statements as follows:

Defendants Statement 1:

Officer Jay Choi, the Fairfax County Police Officer who investigated the accident stated in his report that Plaintiff "appeared to have lost consciousness"

Plaintiff's Response 1:

- Police Officer Jay Choi has not declared himself as being a registered Doctor or a Healthcare professional. Therefore, the Police Officer's statement is more of an expression of his opinion based on his visual observations while providing his critical and time-sensitive services at the accident scene, which is respected by the Plaintiff.

Defendants Statement 2:

Officer Jay Choi stated in his report that Plaintiff had "no apparent injury."

Plaintiff's Response 2:

- Police Officer Jay Choi has not declared himself as being a registered Doctor or a Healthcare professional.
- Any accident can involve injuries to the external as well as internal organs of the living-beings body, which in this case is a body of a human. Absence of any visible injuries to the external organs or parts or lack of blood flow on the exposed parts of the body does not mean that there were no injuries to the body.

- The Police Officer has not confirmed or declared the complete details of the type of health inspections (external and/or internal body & organs) performed by him on the Plaintiff at the accident scene.
- The Police Officer has not confirmed or declared whether his reports were based on inspection of Plaintiff's naked body or as-is with the Plaintiff wearing his clothes at the time of inspection.
- The Plaintiff's understanding is that making such definitive "seeming" remarks or statements on injuries to the human body is beyond the scope of the designated Job function of a Police Officer and therefore the statements of Police Officer Jay Choi are not only questionable but also unacceptable.
- The Police Officer's statement contradicts the Doctors observations and statements which clearly identify the visible external body injuries on the Plaintiff's upper lip, contusions around his face, scalp and a lot of swelling around his eyes, documented explicitly in the reports provided by Reston Hospital. Therefore, the Police Officer's statement or remark referenced by the Defendants is unacceptable.

## Defendants Statement 3:

Officer Jay Choi found that there was no defect in Plaintiff's Camry.

## Plaintiff's Response 3:

- Police Officer Jay Choi has not declared or identified himself as being a "licensed automobile mechanic" or "Federal/Virginia State government authorized automobile specialist or practitioner of automobile defect inspections".
- Any automobile can have defects to the external and/or internal components/parts. Absence of any visible defects on vehicle dashboard panels or indicators does not mean that there are no defects in the subject vehicle.
- The Police Officer has not confirmed or declared the complete details of the type and nature of inspections (external and/or internal components/parts) performed by him on the subject vehicle (Plaintiff's 2011 Toyota Camry) at the accident scene.

- The Plaintiff's understanding is that the Police Officer is authorized to report his observations of the visible damages to the automobile or people or property involved in an accident.
- The Plaintiff's understanding is that making such definitive "seeming" remarks or statements on defect in vehicle are beyond the scope of the designated Job function of a Police Officer and therefore, the Police Officer's statement or remark referenced by the Defendants is unacceptable.

## Defendants Statement 4:

Plaintiff has a history of seizures.

## Plaintiff's Response 4:

- Plaintiff's claims in this lawsuit are for aggravation (means "worsening" or "intensification" or "magnification") of health conditions.
- Plaintiff's medical history reports prior to the subject accident do not contain any Doctors observations of multiple back-to-back seizures spanned within several hours.

## Defendants Statement 5:

Plaintiff was diagnosed with seizure disorder prior to the subject accident.

## Plaintiff's Response 5:

- Prior to the subject accident, the plaintiff was diagnosed with partial and absence seizure conditions and not with frequent seizure conditions as observed in the Reston Hospital after the subject accident.

## Defendants Statement 6:

Plaintiff told Reston Hospital Center Emergency Room personnel that he did not remember the subject accident.

## Plaintiff's Response 6:

- The Plaintiff was transported in a state of unconsciousness to Reston Hospital Center Emergency Room by medic ambulance.
- Plaintiff does not recollect making any such statements to the Reston Hospital Center Emergency Room Personnel.
- The Plaintiff denies making the statement referenced by the defendant's.

## Defendants Statement 7:

The Reston Hospital Center Emergency Room records state that Plaintiff told Emergency Room personnel that "he remembers going to work but does not remember prior to hitting the tree."

## Plaintiff's Response 7:

- Audio and/or video recording containing the Plaintiff making any such statements to the Emergency room personnel was not provided to the Plaintiff.
- Plaintiff does not recollect making any such statements to the Reston Hospital Center Emergency Room Personnel.
- The Plaintiff denies making the statement referenced by the defendant's.

## Defendants Statement 8:

On the day of the subject accident, Plaintiff was admitted to Reston Hospital Center not because of injuries he received in the accident, but because he was having recurring seizures.

## Plaintiff's Response 8:

- The Plaintiff was transported in a state of unconsciousness by medic ambulance to the Reston Hospital Center Emergency Room
- Reston Hospital reports specify that EMS reported to Reston Hospital ER that Patient was initially unresponsive and then confused.
- The Reston Hospital Emergency Room reports confirm that the Plaintiff had sustained visible injuries to upper lip, contusions around his face, scalp and a lot of swelling around his eyes. Since the face of human is part of the head, there is enough evidence to believe that the Plaintiff sustained external and internal injuries to his head, nervous system and brain during the subject accident.
- Reston Hospital Emergency Room Dr. Peter Paganussi MD, the disposition provider at the time of discharge to the Reston Hospital, reported diagnosis at 14:52 on 07/10/2012 "Alteration of consciousness, Seizure, Post ictal syndrome, Injury to tounge, Soft tissue swelling of the buccal mucosa of the upper lip, Contusion"
- Reston Hospital Emergency Room report of 07/10/2012 state that on "The patient's PMD Dr. Hasan was contacted", which means that the diagnosis provided by Dr. Hasan is based on the original observations and findings. A certificate from Dr. Hasan confirms his observations of post traumatic seizure activity after the subject accident.
- Nursing disposition of Reston Hospital ER reports that on 07/10/2012 at 15:39 the Patient was removed from tracker board by Peter Paganussi M.D.

## Defendants Statement 9:

The Reston Hospital Center Emergency Room records state that Plaintiff was admitted to Reston Hospital Center because he was having recurring seizures.

Plaintiff's Response 9:

- The recurring seizures were aggravated by the direct external and internal injuries to the Plaintiff's face, head, nervous system and brain, which were caused during the subject accident due to post-crash non-deployment of the driver side airbags and failure of the subject vehicle to activate the brake override system prior to the back-to-back crashes which is reported in the EDR data to have occurred within a span of less than 10 seconds (5 seconds for TRG2 and 5 seconds for TRG3).
- After being transferred from the Reston Hospital ER to the Reston Hospital ICU, Dr. Mrunalini Chakurkar M.D. reported that "... male who has past history of absense seizures" and later assessed that "Mr. Sanyal presents with multiple absense type of seizures"
- Report of Dr. Mrunalini Chakurkar M.D. stated that "he was given a prescription for increased dosage of carbamazepine and was to be discharged home, but he had 2 more seizures and it was decided to admit the patient and consultation was called for assessment for intensive care unit."
- Report of Dr. Mrunalini Chakurkar M.D. stated that "The patient, as detailed earlier, does remember most of the episode, however, he does not remember having any recurrent seizures as much in intensity as has happened today"
- Report of Dr. Mrunalini Chakurkar M.D. stated that "the patient can be admitted to a monitored unit in PCU and further workup to be decided by the neurology and nephrology."
- Report of Dr. Mrunalini Chakurkar M.D. was signed on 07/17/2012 at 0923, with "TR: TRS", "DD: 07/10/12 1547" and "DT: 0155"

Defendants Statement 10:

On the day of the subject accident, Plaintiff told Mrunalini Chakurkar, M.D. that when Plaintiff had a seizure, he did not remember things that happened immediately prior to the seizure.

Plaintiff's Response 10:

- Audio and/or video recording containing the Plaintiff making any such statements to Mrunalini Chakurkar M.D. was not provided to the Plaintiff.
- Reston Hospital records indicate that Plaintiff was provided heavy dosage of Seizure prevention care medications, which are known to cause semi-consciousness, drowsiness, impede alertness and cause confusion in the patient under treatment of such heavy dosage of medications.
- Plaintiff does not recollect making any such statements to Mrunalini Chakurkar M.D.
- The Plaintiff denies making any such statement to Mrunalini Chakurkar M.D.

Defendants Statement 11:

Dr. Chakurkar's July 10, 2012 Consultation report states that Plaintiff "was still having seizure once every 2 weeks," and that "upon awakening, he would be aware of his surroundings and oriented. He did not remember things that happened immediately prior to the seizure…."

Plaintiff's Response 11:

- Audio and/or video recording containing the Plaintiff making any such statements to Dr. Chakurkar was not provided to the Plaintiff.
- Reston Hospital records indicate that Plaintiff was provided heavy dosage of Seizure prevention care medications, which are known to cause semi-consciousness, drowsiness, impede alertness and cause confusion in the patient under treatment of such heavy dosage of medications.
- Plaintiff does not recollect making any such statements to Dr. Chakurkar.
- The Plaintiff denies making any such statements to Dr. Chakurkar.

Defendants Statement 12:

On the day of the subject accident, Plaintiff told Dr. Chakurkar that he did not remember the subject accident.

Plaintiff's Response 12:

- Plaintiff was transported from the accident scene in medic ambulance in a state of unconsciousness.
- Audio and/or video recording containing the Plaintiff making any such statements to Dr. Chakurkar was not provided to the Plaintiff.
- Reston Hospital records indicate that Plaintiff was provided heavy dosage of Seizure prevention care medications, which are known to cause semi-consciousness, drowsiness, impede alertness and cause confusion in the patient under treatment of such heavy dosage of medications.
- Plaintiff does not recollect making any such statements to Dr. Chakurkar.
- The Plaintiff denies making any such statements to Dr. Chakurkar.

Defendants Statement 13:

Dr. Chakurkar's July 10, 2012 Consultation report states that "[t]his morning, he remembers going to work,…. And he does not remember anything after that he came about [sic] when EMS was surrounding him."

Plaintiff's Response 13:

- Audio and/or video recording containing the Plaintiff making any such statements to Dr. Chakurkar was not provided to the Plaintiff.
- Reston Hospital records indicate that Plaintiff was provided heavy dosage of Seizure prevention care medications, which are known to cause semi-consciousness, drowsiness, impede alertness and cause confusion in the patient under treatment of such heavy dosage of medications.
- Plaintiff does not recollect making any such statements to Dr. Chakurkar.
- The Plaintiff denies making any such statements to Dr. Chakurkar.

## Defendants Statement 14:

On the day of the subject accident, Plaintiff's carbamazepine level was found to be subtherapeutic.

## Plaintiff's Response 14:

- Plaintiff is not a Doctor or healthcare professional and does not understand this statement. Therefore the Plaintiff chooses not to comment on this statement.

## Defendants Statement 15:

On the day of the subject accident, Plaintiff's carbamazepine level was less than 0.5 meg/ml.

## Plaintiff's Response 15:

- Plaintiff is not a Doctor or healthcare professional and does not understand this statement. Therefore the Plaintiff chooses not to comment on this statement.

## Defendants Statement 16:

The therapeutic range for carbamazepine is 4 to 12 meg/ml.

## Plaintiff's Response 16:

- Plaintiff is not a Doctor or healthcare professional and does not understand this statement. Therefore, the Plaintiff chooses not to comment on this statement.

<u>Defendants Statement 17:</u>

Tajammul Ehsan, M.D. stated that the subject accident was the result of Plaintiff having seizure.

<u>Plaintiff's Response 17:</u>

- The defendants and their attorneys have only included a part of the original statement to misinterpret the facts.
- The original statement of Tajammul Ehsan, M.D. was dated 07/12/2012 which stated "Thirty-nine-year-old with presumed diagnosis of posttraumatic epilepsy who comes in with breakthrough seizures resulting in motor vehicle accident with further episodes witnessed in the ER."
- Tajammul Ehsan MD was consulted on 07/12/2012, reason for consultation "Breakthrough seizures"
- Tajammul Ehsan MD stated in his report that "Patient was found to have contusions around his face, scalp and a lot of swelling around his eyes."
- Tajammul Ehsan MD stated in his report that "The patient was noted to have 2 seizures in the ER."
- Tajammul Ehsan MD stated in his report that "He is admitted to the hospital for further evaluation."
- Tajammul Ehsan MD recommended "Continue Tegretol, would recommend getting patient into more therapeutic dose, which would be in the range of 600-800 mg per day as tolerated. Monitor Tegretol levels. Keppra has been added after discussion between the ER physician, attending phycisian and Dr. Hasan."
- Tajammul Ehsan MD report was signed on 08/14/12 at 1843 with "TR: LSC", "DT: 07/12/12 2107" and "DT: 07/13/12 0709"

## Defendants Statement 18:

Dr. Ehsan's July 12, 2012 Consultation report states that Plaintiff "comes in with breakthrough seizures resulting in motor vehicle accident with further episodes witnessed in the ER."

## Plaintiff's Response 18:

- The defendants and their attorneys have only included a part of the original statement to misinterpret the facts.
- The original statement of Tajammul Ehsan, M.D. was dated 07/12/2012 which stated "Thirty-nine-year-old with presumed diagnosis of posttraumatic epilepsy who comes in with breakthrough seizures resulting in motor vehicle accident with further episodes witnessed in the ER."
- Tajammul Ehsan MD was consulted on 07/12/2012, reason for consultation "Breakthrough seizures"
- Tajammul Ehsan MD stated in his report that "Patient was found to have contusions around his face, scalp and a lot of swelling around his eyes."
- Tajammul Ehsan MD stated in his report that "The patient was noted to have 2 seizures in the ER."
- Tajammul Ehsan MD stated in his report that "He is admitted to the hospital for further evaluation."
- Tajammul Ehsan MD recommended "Continue Tegretol, would recommend getting patient into more therapeutic dose, which would be in the range of 600-800 mg per day as tolerated. Monitor Tegretol levels. Keppra has been added after discussion between the ER physician, attending phycisian and Dr. Hasan."
- Tajammul Ehsan MD report was signed on 08/14/12 at 1843 with "TR: LSC", "DT: 07/12/12 2107" and "DT: 07/13/12 0709"

## Defendants Statement 19:

The subject Toyota Camry's airbag electronic control unit was imaged on April 3, 2015.

Plaintiff's Response 19:

- Pursuant to the Court's order, per Defendant's requests for vehicle inspection and EDR/VCU data download, Plaintiff complied with the Court's order and produced the vehicle at the location designated by the defendants.

Defendants Statement 20:

The imaged data shows no accelerator pedal application and no brake pedal application for 4.3 seconds prior to impact.

Plaintiff's Response 20:

- This data is for the first side crash event experienced on 07/10/2012 and is referenced as TRG2 on the EDR report
- The subject case and Police report refers to 2 independent crashes with the first event hitting the curb, identified as Side crash and referenced as TRG2 on EDR report of the subject vehicle.
- The second crash event on 07/10/2012 was the Frontal crash with the Tree and referenced as TRG3 on the EDR report of the subject vehicle.
- Information for TRG3 is referenced as "Most Recent Event"
- TRG3 information clearly identifies the variation in the Engine RPM (ranging between 1600 RPM and 400 RPM) within a span of less than 5 seconds.
- EDR data for TRG3, the most recent event indicates Brake switch as ON, which is an evidence of application of Brake pedal.
- For TRG3, the speed reported as 13.7 mph for an Engine RPM of 800, 1,200 and 1600 is a clear indication of the abnormal behavior of the subject vehicle which contributed to the crash and is related to unintended acceleration event experienced on the subject vehicle.
- For TRG2, the speed reported as 13.7 mph, 14.9 mph and 16.2 for an Engine RPM of 800 is a clear indication of the abnormal behavior of the subject vehicle which contributed to the crash and is related to unintended acceleration event experienced on the subject vehicle.

## Pre-Crash Data, -5 to 0 seconds (Most Recent Event, TRG 3)

| Time (sec) | -4.6 | -3.6 | -2.6 | -1.6 | -0.6 | 0 (TRG) |
|---|---|---|---|---|---|---|
| Vehicle Speed (MPH [km/h]) | 13.7 [22] | 13.7 [22] | 13.7 [22] | 13.7 [22] | 8.7 [22] | 5 [8] |
| Brake Switch | OFF | OFF | OFF | ON | ON | ON |
| Accelerator Rate (V) | 1.02 | 0.78 | 0.78 | 0.78 | 0.78 | 0.78 |
| Engine RPM (RPM) | 1,200 | 1,200 | 1,200 | 1,600 | 1,200 | 400 |

## Estimated Speed (MPH) by Engine RPM:

| Engine RPM (RPM) | 1,200 | 1,200 | 1,200 | 1,600 | 1,200 | 400 |
|---|---|---|---|---|---|---|
| Estimated Speed (MPH) | 25.4 | 25.4 | 25.4 | 33.8 | 25.4 | 8.5 |

## Pre-Crash Data, -5 to 0 seconds (1st Prior Event, TRG 2)

| Time (sec) | -4.3 | -3.3 | -2.3 | -1.3 | -0.3 | 0 (TRG) |
|---|---|---|---|---|---|---|
| Vehicle Speed (MPH [km/h]) | 13.7 [22] | 14.9 [24] | 14.9 [24] | 16.2 [26] | 16.2 [26] | 13.7 [22] |
| Brake Switch | OFF | OFF | OFF | OFF | OFF | OFF |
| Accelerator Rate (V) | 0.78 | 0.78 | 0.78 | 0.78 | 0.78 | 0.78 |
| Engine RPM (RPM) | 800 | 800 | 800 | 800 | 800 | 800 |

## Estimated Speed (MPH) by Engine RPM:

| Engine RPM (RPM) | 800 | 800 | 800 | 800 | 800 | 800 |
|---|---|---|---|---|---|---|
| Estimated Speed (MPH) | 16.9 | 16.9 | 16.9 | 16.9 | 16.9 | 16.9 |

Defendants Statement 21:

The imaged data shows the subject vehicle to be travelling between 13.7 and 16.2 miles per hour for the 4.3 seconds prior to impact, and the vehicle travelling at 13.7 miles per hour at the time of impact.


Plaintiff's Response 21:

- This data referenced in this statement is for the first Side crash event experienced on 07/10/2012 and is referenced as TRG2 on the EDR report.
- The data for the second crash event experienced on 07/10/2012 is referenced as the most recent event, TRG3 on the EDR report.


Pre-Crash Data, -5 to 0 seconds (Most Recent Event, TRG 3)

| Time (sec) | -4.6 | -3.6 | -2.6 | -1.6 | -0.6 | 0 (TRG) |
|---|---|---|---|---|---|---|
| Vehicle Speed (MPH [km/h]) | 13.7 [22] | 13.7 [22] | 13.7 [22] | 13.7 [22] | 8.7 [22] | 5 [8] |
| Brake Switch | OFF | OFF | OFF | ON | ON | ON |
| Accelerator Rate (V) | 1.02 | 0.78 | 0.78 | 0.78 | 0.78 | 0.78 |
| Engine RPM (RPM) | 1,200 | 1,200 | 1,200 | 1,600 | 1,200 | 400 |


Estimated Speed (MPH) by Engine RPM:

| Engine RPM (RPM) | 1,200 | 1,200 | 1,200 | 1,600 | 1,200 | 400 |
|---|---|---|---|---|---|---|
| Estimated Speed (MPH) | 25.4 | 25.4 | 25.4 | 33.8 | 25.4 | 8.5 |

## Pre-Crash Data, -5 to 0 seconds (1st Prior Event, TRG 2)

| Time (sec) | -4.3 | -3.3 | -2.3 | -1.3 | -0.3 | 0 (TRG) |
|---|---|---|---|---|---|---|
| Vehicle Speed (MPH [km/h]) | 13.7 [22] | 14.9 [24] | 14.9 [24] | 16.2 [26] | 16.2 [26] | 13.7 [22] |
| Brake Switch | OFF | OFF | OFF | OFF | OFF | OFF |
| Accelerator Rate (V) | 0.78 | 0.78 | 0.78 | 0.78 | 0.78 | 0.78 |
| Engine RPM (RPM) | 800 | 800 | 800 | 800 | 800 | 800 |

## Estimated Speed (MPH) by Engine RPM:

| Engine RPM (RPM) | 800 | 800 | 800 | 800 | 800 | 800 |
|---|---|---|---|---|---|---|
| Estimated Speed (MPH) | 16.9 | 16.9 | 16.9 | 16.9 | 16.9 | 16.9 |

## Defendants Statement 22:

Plaintiff did not tell Officer Jay Choi that his 2011 Toyota Camry experienced an unintended acceleration event at the time of the subject accident.

## Plaintiff's Response 22:

- The Police report clearly states that the Plaintiff was in a state of unconsciousness. Therefore, on 07/10/2012, at the accident scene, the Plaintiff was not in a state of health to have any communication with Police Officer Jay Choi.
- Police Officer Jay Choi has not identified himself as licensed automotive professional.
- Upon departure from the accident scene, there was no reason or context or requirements by Law to discuss the subject vehicle's defects with Police Officer Jay Choi.

Defendants Statement 23:

Plaintiff has never told any health care provider that his 2011 Toyota Camry experienced an unintended acceleration event at the time of subject accident.

Plaintiff's Response 23:

- There were no reasons or context or requirements by Law to discuss the subject vehicle's defects with any health care providers. Therefore, the Plaintiff never told any health care provider that his 2011 Toyota Camry experienced an unintended acceleration event at the time of subject accident.

Defendants Statement 24:

Plaintiff has never told any GEICO employee or representative that his 2011 Toyota Camry experienced an unintended acceleration event at the time of the subject accident.

Plaintiff's Response 24:

- Plaintiff does not recollect being asked by any GEICO employee to provide complete list of defects in his 2011 Toyota Camry. Therefore, Plaintiff has never told any GEICO employee or representative that his 2011 Toyota Camry experienced an unintended acceleration event at the time of the subject accident.

Defendants Statement 25:

On June 12, 2014, Plaintiff wrote to Koons Tysons Toyota, Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Corporation regarding the subject accident.

Plaintiff's Response 25:

- Plaintiff wrote and mailed the letter to Koons Tysons Toyota, Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Corporation regarding the subject accident. However, only Koons Tysons Toyota responded stating that the Plaintiff should directly contact Toyota to report the subject accident.

Defendants Statement 26:

Plaintiff did not claim in his letters to Koons Tysons Toyota, Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Corporation that his 2011 Toyota Camry experienced an unintended acceleration event at the time of the subject accident.

Plaintiff's Response 26:

- In his letters to Koons Tysons Toyota, Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Corporation, the Plaintiff claimed that his 2011 Toyota Camry experienced crash accident event during which the airbag did not deploy, along with other defects contributing to the accident event.  Unintended acceleration is one of the many defects that the Plaintiff claimed under the broad definition referenced and mentioned as defects in his 2011 Toyota Camry.

Defendants Statement 27:

Plaintiff did not allege in his Complaint and Amended Complaint that his 2011 Toyota Camry experienced an unintended acceleration event at the time of the subject accident.

Plaintiff's Response 27:

- The Plaintiff has identified that his 2011 Toyota Camry has defects contributing to the subject accident. Unintended acceleration is one of

the many defects that the Plaintiff claimed under the broad definition referenced and mentioned as defects in his 2011 Toyota Camry.

## Defendants Statement 28:

Prior to responding to Toyota Motor Sales, U.S.A., Inc's Interrogatories on March 20, 2015, Plaintiff never claimed that his 2011 Toyota Camry experienced an unintended acceleration event at the time of the subject accident.

## Plaintiff's Response 28:

- The Plaintiff had identified that his 2011 Toyota Camry has defects contributing to the subject accident. Unintended acceleration is one of the many defects that the Plaintiff claimed under the broad definition referenced and mentioned as defects in his 2011 Toyota Camry.

## Defendants Statement 29:

Plaintiff's 2011 Toyota Camry did not experience an unintended acceleration event prior to the day of the subject accident.

## Plaintiff's Response 29:

- The Plaintiff has claimed the unintended acceleration event for the subject vehicle during the day of the subject accident.
- The EDR data report of the subject vehicle clearly provides the data and evidence to support the Plaintiff's claim that the subject vehicle experienced an unintended acceleration event on the day of the subject accident.

## Defendants Statement 30:

Plaintiff's 2011 Toyota Camry has not experienced an unintended acceleration event since the day of the subject accident.

Plaintiff's Response 30:

- The Plaintiff has claimed the unintended acceleration event for the subject vehicle during the day of the subject accident.
- The EDR data report of the subject vehicle clearly provides the data and evidence to support the Plaintiff's claim that the subject vehicle experienced an unintended acceleration event on the day of the subject accident.

Defendants Statement 31:

Plaintiff has not disclosed any expert witnesses.

Plaintiff's Response 31:

- Plaintiff has explicitly identified that he will be the witness testifying in this case.
- Plaintiff has disclosed that any documents submitted and availed during the proceedings of the case, including those availed during the Rule 26 discovery process will be the supporting documents, witness and evidences used to support and defend the Plaintiff's claims.

Defendants Statement 32:

Plaintiff does not intend to disclose any expert witnesses.

Plaintiff's Response 32:

- Plaintiff has explicitly identified that he will be the witness
- Plaintiff has disclosed that any documents submitted and availed during the proceedings of the case, including those availed during the Rule 26 discovery process will be the supporting documents, witness and evidences used to support and defend the Plaintiff's claims.

## Defendants Statement 33:

Plaintiff will not testify as an expert witness at trial.

## Plaintiff's Response 33:

- Plaintiff has explicitly identified that he will be the witness testifying in this case.
- Plaintiff has disclosed that any documents submitted and availed during the proceedings of the case, including those availed during the Rule 26 discovery process will be the supporting documents, witness and evidences used to support and defend the Plaintiff's claims.

## Defendants Statement 34:

Plaintiff is not qualified to testify as an expert witness at trial.

## Plaintiff's Response 34:

- Plaintiff has filed this lawsuit and is qualified as well as allowed by Law to testify as witness during the trial and other proceedings of this case.
- Plaintiff is experiencing the sufferings resulting from the injuries from the subject accident causing "aggravation of seizure and other health conditions" impacting his work and financial damages caused due to reduction in income potential which are directly impacting the Plaintiff on a day-to-day basis. Therefore, the Plaintiff is qualified to testify as witness at trial
- Plaintiff has explicitly identified that he will be the witness testifying in this case
- Plaintiff has disclosed that any documents submitted and availed during the proceedings of the case, including those availed during the Rule 26 discovery process will be the supporting documents, witness and evidences used to support and defend the Plaintiff's claims.

<u>Defendants Statement 35:</u>

Plaintiff's 2011 Toyota Camry was equipped with a brake override system as the time of the subject accident.

<u>Plaintiff's Response 35:</u>

- There are no visual displays or stickers in the subject vehicle that confirm or provide visual indicators on the 2011 Toyota Camry being equipped with a brake override system

<u>Defendants Statement 36:</u>

Plaintiff's allegation that his 2011 Toyota Camry is defective because it is not equipped with a brake override system is incorrect.

<u>Plaintiff's Response 36:</u>

- The failure of the brake override system to perform and deliver its intended tasks, functions and purpose, claimed by defendants to be included in the subject vehicle for taking proactive actions in preventing crash events, is a clear and suffice justification of the brake override system being ineffective as-well-as defective, thereby contributing to the overall defect of the subject vehicle, 2011 Toyota Camry.
- It is reasonable to believe that an ineffective brake override system is as good as being non-existent.
- The subject vehicle experienced 2 back-to-back crashes in less than 10 seconds (First one being a side crash with the right curb (TRG2) and second crash being Frontal with the tree (TRG3) on 07/10/2012, however, the brake override system failed to prevent both the crashes at speeds considered being high enough to be fatal for the driver and passengers of the 2011 Toyota Camry.
- There are known accident incidents which have reportedly caused fatality during crashes with impacts of 5 mph.

**Defendants Statement 37:**

The subject accident was the result of Plaintiff having a seizure.

**Plaintiff's Response 37:**

- There is no video or photographic evidence produced by the defendants that confirm this statement of the defendants.
- The Doctors certificate confirms the diagnosis by the neurologist that the Plaintiff suffered post-traumatic seizures due to Motor Vehicle accident of 07/10/2012

**Defendants Statement 38:**

Plaintiff's allegation that the airbags in his 2011 Toyota Camry are defective is speculative.

**Plaintiff's Response 38:**

- Plaintiff's allegation that the airbags in his 2011 Toyota Camry are defective is not a speculation but a fact which is supported by explicit documentation.

* 2011 TOYOTA CAMRY OWNERS MANUAL STATES THAT THE AIR-BAGS ARE DESIGNED TO DEPLOY IN FRONTAL CRASH AT SPEED's BETWEEN 12-18 mPh. THE SUBJECT VECHICLE WAS WITHIN THE RANGE OF DEPLOYMENT CRITERIA SPECIFIED BY TOYOTA

**Defendants Statement 39:**

Plaintiff's allegation that his 2011 Toyota Camry is defective because it experienced an unintended acceleration event is speculative.

**Plaintiff's Response 39:**

- The unintended acceleration event experienced in the subject vehicle 2011 Toyota Camry is a definite fact which is supported by explicit data documented in the EDR report of the subject vehicle.

- The subject case and Police report refers to 2 independent crashes with the first event hitting the right curb, identified as Side crash and referenced as TRG2 on EDR report of the subject vehicle.
- The second crash event on 07/10/2012 was the Frontal crash with the Tree and referenced as TRG3 on the EDR report of the subject vehicle.
- Information for TRG3 is referenced as "Most Recent Event"
- TRG3 information clearly identifies the variation in the Engine RPM (ranging between 1600 RPM and 400 RPM) within a span of less than 5 seconds.
- For TRG3, the speed reported as 13.7 mph for an Engine RPM of 800, 1,200 and 1600 is a clear indication of the abnormal behavior of the subject vehicle which contributed to the crash and is related to unintended acceleration event experienced on the subject vehicle.
- For TRG2, the speed reported as 13.7 mph, 14.9 mph and 16.2 for an Engine RPM of 800 is a clear indication of the abnormal behavior of the subject vehicle which contributed to the crash and is related to unintended acceleration event experienced on the subject vehicle.

Pre-Crash Data, -5 to 0 seconds (Most Recent Event, TRG 3)

| Time (sec) | -4.6 | -3.6 | -2.6 | -1.6 | -0.6 | 0 (TRG) |
|---|---|---|---|---|---|---|
| Vehicle Speed (MPH [km/h]) | 13.7 [22] | 13.7 [22] | 13.7 [22] | 13.7 [22] | 8.7 [22] | 5 [8] |
| Brake Switch | OFF | OFF | OFF | ON | ON | ON |
| Accelerator Rate (V) | 1.02 | 0.78 | 0.78 | 0.78 | 0.78 | 0.78 |
| Engine RPM (RPM) | 1,200 | 1,200 | 1,200 | 1,600 | 1,200 | 400 |

Estimated Speed (MPH) by Engine RPM:

| Engine RPM (RPM) | 1,200 | 1,200 | 1,200 | 1,600 | 1,200 | 400 |
|---|---|---|---|---|---|---|
| Estimated Speed (MPH) | 25.4 | 25.4 | 25.4 | 33.8 | 25.4 | 8.5 |

## Pre-Crash Data, -5 to 0 seconds (1st Prior Event, TRG 2)

| Time (sec) | -4.3 | -3.3 | -2.3 | -1.3 | -0.3 | 0 (TRG) |
|---|---|---|---|---|---|---|
| Vehicle Speed (MPH [km/h]) | 13.7 [22] | 14.9 [24] | 14.9 [24] | 16.2 [26] | 16.2 [26] | 13.7 [22] |
| Brake Switch | OFF | OFF | OFF | OFF | OFF | OFF |
| Accelerator Rate (V) | 0.78 | 0.78 | 0.78 | 0.78 | 0.78 | 0.78 |
| Engine RPM (RPM) | 800 | 800 | 800 | 800 | 800 | 800 |

## Estimated Speed (MPH) by Engine RPM:

| Engine RPM (RPM) | 800 | 800 | 800 | 800 | 800 | 800 |
|---|---|---|---|---|---|---|
| Estimated Speed (MPH) | 16.9 | 16.9 | 16.9 | 16.9 | 16.9 | 16.9 |

## Defendants Statement 40:

Plaintiff's allegation that his 2011 Toyota Camry is defective because it is not equipped with a brake override system is speculative.

## Plaintiff's Response 40:

- The failure of the brake override system to perform and deliver its intended tasks, functions and purpose, claimed by defendants to be included in the subject vehicle for taking proactive actions in preventing crash events, is a clear and suffice justification of the brake override system being ineffective as-well-as defective, thereby contributing to the overall defect of the subject vehicle, 2011 Toyota Camry.
- It is sensible to believe that an ineffective brake override system is as good as being non-existent.
- The subject vehicle experienced 2 back-to-back crashes in less than 10 seconds (First one being a side crash with the right curb (TRG2) and second crash being Frontal with the tree (TRG3) on 07/10/2012,

however, the brake override system failed to prevent both the crashes at speeds considered being high enough to be fatal for the driver and passengers of the 2011 Toyota Camry.

- There are known accident incidents which have reportedly caused fatality during crashes with impacts of 5 mph.

Defendants Statement 41:

Plaintiff's lost income is speculative.

Plaintiff's Response 41:

- As evidence of his lost income, the Plaintiff has already provided to the defendants, his income documents including W2's and IRS filings for several years preceding 2012 as well as after 2012.
- The lost income claims are based on historical income records as well as projected income for future years till the official retirement age of 65 years.
- Lost income also contributes directly to the reduction in Social Security Income and Medicare benefits.

Wherefore, based on the aforementioned Plaintiff's memorandum, information, concerns, reasons, responses and statements, including oppositions stated above, the Plaintiff respectfully demands this Court to invalidate or decline or dismiss any filings by the defendants which make references to any such memo or filing titled as "Joint Stipulation of Uncontested Facts".

RESPECTFULLY SUBMITTED, this 9th day of May 2015.

By: _Satyajit 05/19/2015_____

SATYAJIT SANYAL, Pro Se

Satyajit Sanyal

Mailing Address:

11654 Plaza America Drive, #622,

Reston, Virginia - 20190


<u>Copy of Plaintiff's Memorandum and Statements including Opposition to Defendants, Toyota Motor Manufacturing Kentucky, Inc. and Toyota Motor Sales, U.S.A., Inc.'s Memo titled as Joint Stipulation of Uncontested Facts will be mailed to Defendant's Attorney on record</u>:


Joel A. Dewey

Paul J. Day

DLA Piper LLP (US)

The Marbury Building

6225 Smith Avenue

Baltimore, Maryland – 21209

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRIGINIA**
**ALEXANDRIA DIVISION**

SATYAJIT SANYAL
_____
                    Plaintiff,

          v.

TOYOTA MOTOR NORTH AMERICA, INC, et al.
_____
                    Defendant.

Civil Action No. 1:14-CV-0960 -JCC
                              -TCB

# CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared, or assisted in the preparation of this document.

SATYAJIT SANYAL
_____
Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _05/20/2015_____ (Date)

**OR**

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document.

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)