IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| SATYAJIT SANYAL | * | |
| Plaintiff | * | |
| v. | * | Case No. 1:14-cv-00960-JCC-TCB |
| TOYOTA MOTOR NORTH AMERICA, INC, et al. | * | |
| | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS' REPLY IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Defendants Toyota Motor Sales, U.S.A., Inc., Toyota Motor Manufacturing Kentucky, Inc. and Toyota Motor Engineering & Manufacturing North America, Inc. (collectively "Defendants"), by their attorneys, hereby submit this reply in support of their Motion for Summary Judgment ("Motion").

**Introduction**

Defendants' Motion clearly establishes that Defendants are entitled to judgment on all of Plaintiff's claims because Plaintiff has no expert witnesses on the issues of liability and causation. Plaintiff's Memorandum in Opposition to Defendants' Motion ("Opposition") makes no effort to refute this fact.

Defendants' Motion sets out in detail the opinions of their expert witnesses that (1) the subject vehicle did not experience an unintended acceleration event, Memorandum in Support [ECF Document 42] at 18-21; and (2) the subject vehicle's airbags were not defective. *Id.* at 14-18. Defendants do not present this evidence to suggest that Plaintiff would not challenge

those opinions. Rather, the opinions "present[] evidence tending to disprove [Plaintiff's accident and defect theories, and] the theory that the alleged defect[s] existed when the [Camry] left [Toyota's] hands." *Wilder v. Toyota Motor Sales, U.S.A., Inc.*, 23 Fed. Appx. 155, 158 (4th Cir. 2001). The experts' opinions further demonstrate that the subject vehicle "was well designed, well tested, consistent with industry custom, and not defective." *Id.* at 157. In the face of such evidence, Virginia law requires that Plaintiff must offer admissible evidence in the form of expert testimony to challenge Defendants' experts' opinions, *see, e.g., id.* at 158, and Plaintiff has not done so.

Virginia law also is clear that "without specific evidence of a defect," Plaintiff can defeat a summary judgment motion "only if his evidence tends to eliminate all reasonable possibilities that some other party or cause is to blame for the accident, or if the facts are such that no other inference but the existence of a defect . . . is reasonable." *Id.* at 157, *quoting Lemons v. Ryder Truck Rental, Inc.*, 906 F.Supp. 328, 333 (W.D. Va. 1995). Lacking any expert testimony, Plaintiff's evidence is insufficient to meet this burden.

For example, in this case Plaintiff claims he went off the road due to an unintended acceleration defect in the subject vehicle. Toyota presented competent expert evidence that Plaintiff had a seizure that caused the accident, and that there was no unintended acceleration, in the forms of (1) his treating doctors' medical record reports that Plaintiff had "breakthrough seizures resulting in motor vehicle accident," Motion at 2-3, 7-8, (2) Ms. Yaek's expert analysis showing that for the last 4.3 seconds prior to crash Plaintiff was not touching either pedal, he had at least 4 seconds to apply his brakes prior to impact, and that "[t]he data imaged from the ECU is therefore consistent with what is reflected in Plaintiff's medical records – namely that Plaintiff had a seizure, and lost consciousness, immediately prior to the subject accident," Motion at 5-6,

and (3) Mr. Stopschinski's expert opinions that the electronic throttle, braking and accelerator systems were safe and reliable and were operating properly on Plaintiff's vehicle. Motion at 18-21. Plaintiff has no competent expert evidence to rebut the evidence showing that there was no unintended acceleration in this accident, the medical evidence showing his seizure caused the accident, or the significance of the ECU data, and summary judgment should be entered.

Plaintiff claims the airbag should have deployed in this case. Toyota presented competent evidence showing why it did not, in the form of (1) Ms. Yaek's reconstruction as to impact speed and Delta V, Motion at 5-6, and (2) Dr. Van Arsdell's opinion that the air bag design was non-defective and met all governmental and industry standards, and that the air bag properly did not deploy given the crash forces and Delta V. Motion at 15-18. Plaintiff has no competent expert evidence to rebut Ms. Yaek's accident reconstruction analysis and Dr. Van Arsdell's opinions that the airbag design was non-defective and that the airbag non-deployment was appropriate given the crash forces, and summary judgment should be granted.

Thus, once Toyota has presented competent expert testimony to rebut Plaintiff on all the central issues in the case, in order for Plaintiff's claim to survive, under Virginia law Plaintiff must provide competent expert testimony, and he has none. *Wilder, supra* at 157-158; *Hyundai Motor Company, Ltd. v. Duncan*, 766 S.E.2d 893, 898 (Va. 2015).

I. **Plaintiff's Admission of the "Complexity" Of The Alleged Defects Emphasizes the Need for Expert Testimony in this Product Liability Case**

It is significant that Plaintiff does not dispute the complexity of his defect allegations – because under Virginia law, it is that complexity which requires him to present expert testimony. Indeed, he explicitly recognizes that the fact that Defendants have retained and disclosed

"several expert witnesses" "is a clear indication of the nature of complexity involved in investigating the reported accident event and the claimed defects." Opposition at ¶ 11.[1]

Plaintiff further acknowledges the complex nature of the issues in this case when he suggests that the Court may have difficulty in properly understanding the issues, *id.* at ¶¶ 15-17, and that the defects he alleges exist in the subject vehicle are better investigated by Federal automotive regulatory agencies, *id.* at ¶ 18. Again, these statements serve to underscore the need for expert testimony in order for Plaintiff to survive summary judgment in this case.

## II. Plaintiff Has Not Retained Or Disclosed Expert Witnesses And Himself Is Not Qualified To Offer Expert Testimony

Plaintiff does not dispute the crucial facts that he has neither retained nor disclosed expert witnesses in this case, and that he is not qualified to offer expert testimony himself. His failure to dispute these facts is dispositive regarding Defendants' Motion.

First, this Court's Scheduling Order filed March 4, 2015 [ECF Document 37] contains the following requirement concerning oppositions to summary judgment motions:

> A brief in opposition to a motion for summary judgment must include a separately captioned section within the brief addressing, in numbered-paragraph form corresponding to the movant's section, each of the movant's enumerated facts and indicating whether the non-movant admits or disputes the fact with appropriate citations to the record. The Court may assume that any fact identified by the movant as undisputed in the movant's brief that is not specifically controverted in the non-movant's brief in the manner set forth above is admitted for the purpose of deciding the motion for summary judgment.

Defendants' Motion contained a separate statement of 34 Undisputed Material Facts. Motion at 6-10. The above-quoted Order required that Plaintiff's Opposition include a separate section addressing each of the 34 enumerated facts, whether he admits or disputes them and with

---

[1] It is also interesting that Plaintiff now admits that the subject vehicle met the Federal Motor Vehicle Safety Standards, *id.* at ¶ 18, and that the subject vehicle's engine was at idle during the accident, *id.* at ¶ 29, thus abandoning two of his defect allegations.

-4-

appropriate citations to the record.  Plaintiff failed to comply with this rule.[2]  Pursuant to the Court's Order, because Plaintiff has not responded to these enumerated facts, they are deemed admitted for the purpose of deciding this motion.  Thus, for purposes of this motion, it is admitted that Plaintiff is not an expert in automobiles, does not have any expertise in the subject matter of the documents he has produced in this case, and is not qualified to offer expert testimony because:

- he has never taken any courses on automotive design, manufacture or assembly, or the design, manufacture or assembly of any automotive components;

- he has never published any articles or papers on any topic;

- none of Plaintiff's work experience dealt with automotive design, manufacture or assembly;

- none of the clients Plaintiff has done work for were automobile manufacturers, or manufacturers of automotive components;

- he does not hold any patents of any kind;

- he has never designed an automobile, or any automotive component;

- he has never observed an automobile, or automotive component, being manufactured or assembled;

- he has no medical training;

- he has never taken any courses in biomechanics;

- he has never taken any courses in injury causation;

- he has never taken any courses in accident investigation;

---

[2] Defendants note that Ex. 2 to Plaintiff's Opposition is his Memorandum Statements and Responses to Toyota's Proposed Joint Stipulation of Uncontested Facts, which is a separate document Plaintiff filed in response to a draft stipulation prepared by Defendants in an effort for the parties to comply with this Court's February 2, 2015 Order requiring that a joint statement of stipulated facts be filed by the May 21, 2015 pre-trial conference.  However, the proposed stipulations discussed in Ex. 2 differ in many respects from the Undisputed Material Facts contained at pages 6-10 of Defendants' Motion.  Many of the 34 Undisputed Material Facts in the Motion are not addressed in Ex. 2 to Plaintiff's Opposition (see Undisputed Material Facts 2, 5, 6, 11 and 20-34); other proposed stipulations in Ex. 2 vary from the Undisputed Material Facts in terms of the language of the proposed stipulation, leaving the Court to guess as to Plaintiff's intent.  Thus, this document does not satisfy the Court's rule quoted above nor save Plaintiff from its result.

- he has never taken any courses in accident reconstruction;

- he has never taken any courses in vehicle analysis and inspection; and

- he does not have any automobile mechanic training.

Motion, pp. 8-10, ¶¶ 20-34. Since all of these facts are deemed admitted, it is clear that Plaintiff himself is not qualified to offer any expert testimony on any issue at the trial of this case. Since Plaintiff has confirmed that he himself will be his only witness at trial, it is undisputed that there will be no competent expert testimony offered by Plaintiff.

While Plaintiff does attempt to excuse his failure to retain experts at least in part on a "lack of complete set of documentation related to design, parts assembly and quality control report for the subject vehicle," Opposition at ¶ 12, that argument is unavailing. Defendants have actively participated in discovery, and have complied with all required pretrial disclosures and deadlines. Plaintiff, in contrast, has not. He has never filed the required Fed. R. Civ. P. 26(a)(1) disclosures, did not cooperate in preparing and filing the required stipulation of uncontested facts, and failed to timely file the required Rule 26(a)(3) disclosures.[3]

More significant for Plaintiff's claim that he lacks documentation he now considers relevant to the case is the fact that Plaintiff never served any written discovery requests on Defendants, or requested depositions of the Defendants or Defendants' expert witnesses. Discovery is closed, and Plaintiff cannot raise his own failure to avail himself of the discovery process as a justification for his failure to retain experts who could offer admissible evidence to support his claims.[4]

---

[3] At the May 21, 2015 pretrial conference, this Court granted Plaintiff an extension until May 29, 2015 to file those disclosures. As of the filing of this Reply, Defendants have not received been served with anything from Plaintiff.

[4] Plaintiff also asks that the Court order Defendants to "release the entire raw data extracted from the subject vehicle [during the vehicle inspection] on 04/03/2015." *Id.* at ¶ 33. It is unclear what Plaintiff means by "raw data" – Plaintiff received copies of all data from the EDR at the time of the April 3, 2015 EDR readout. In any event, Plaintiff never made a request, formal or otherwise, for "raw data," and cannot now demand what amounts to an

Therefore, it is undisputed that Plaintiff has no qualified expert witness who can testify to his claim of a defect in the subject vehicle, or to a causal link between any defect in the subject vehicle and his injuries. Under the case law discussed in Toyota's Motion at pp. 12-14, summary judgment on these bases is therefore appropriate.

### III. Plaintiff's Attempts To Refute Defendants' Position Further Demonstrate The Need For Expert Testimony

Rather than attempting to negate the fact that he has failed to retain expert witnesses, or the fact that expert testimony is required, Plaintiff spends the majority of the Opposition attempting to challenge Defendants' theory of the accident, and the lack of defects in the subject vehicle. But, as described above, Plaintiff is not qualified to do this analysis, and Plaintiff only succeeds in further illustrating why expert testimony is required in this case.

For example, Plaintiff claims that the readout of the subject vehicle's Event Data Recorder ("EDR") supports his allegation that the vehicle experienced an unintended acceleration event. *Id.* at ¶¶ 36-37 and 43-44. However, Plaintiff plainly misinterprets the EDR readout.

The EDR data shows that there were three separate events recorded: TRG 1, a side impact; TRG 2, a front impact; and TRG3, a rear impact. Motion at p. 5, n. 3; Yaek Affidavit, Motion Ex. 7, ¶¶ 4-5; Motion, Ex. 8 at p. 5. All three were airbag non-deployment events. *Id*. TRG1 is the oldest, and TRG3 is the most recent. *Id.*

According to Defendants' experts, TRG3 is a rear impact crash event which Plaintiff described in his deposition. *Id*. Plaintiff testified that he was hit from behind while he was stopped at a traffic light sometime after the date of the subject accident. Sanyal Deposition, Motion, Ex. 6 at p. 214, line 10 to p. 215, line 18.

---

Order compelling discovery he never requested. The same is true of his demand for an Order compelling production of documents in ¶ 21 of the Opposition.

Plaintiff incorrectly claims that TRG 3 is his tree impact, but he is wrong for several reasons. First, TRG 3 is a <u>rear</u> impact. Yaek Affidavit, Motion Ex. 7, ¶¶ 4-5. Since the subject crash was a <u>front</u> impact, it cannot be TRG 3. Second, the maximum Delta-V in the TRG 3 impact was 2.4 mph, which is too small to be the subject vehicle's impact with the tree in the subject accident. Motion Ex. 8 at p. 7.

TRG 2 is the subject accident, a frontal crash. Yaek Affidavit, Motion Ex. 7, ¶¶ 4-5. Plaintiff erroneously claims in his Opposition that TRG 2 was his <u>side</u> impact with the curb on the right side of the road during the subject accident; Plaintiff's claim makes no sense because TRG 2 is unequivocally identified as a Front/Rear Crash rather than a side crash. Motion at 5, n. 3; Yaek Affidavit, Motion Ex. 7, ¶¶ 4-5; Motion Ex. 8 at 5.

Plaintiff's admission that his (incorrect) claims regarding what the EDR readout represents are only "[b]ased on [his] understanding of the EDR data in correlation with the Police [sic] report," *id.* at ¶ 43, again shows the need for expert testimony. Plaintiff's lay knowledge and experience are insufficient to allow him to correctly interpret the objective evidence provided by the EDR.

Similarly, Plaintiff refers to two videos documenting testing by Toyota, and claims without any evidentiary citation or justification that the videos support his airbag defect claim, and that the videos show that Defendants were "completely aware" of an alleged risk of developing seizures following an accident. *Id.* at ¶¶ 2-4. He does not explain how so much can be read into two seemingly straightforward crash test videos. Nor can he, because he is not qualified to offer such an explanation, and has no expert witness who is qualified to offer such an explanation.

## IV. Defendants' Expert Witnesses Are Qualified To Offer Opinions At Trial

Federal Rule of Civil Procedure 702 provides in pertinent part that a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion . . . ." The Defendants' expert witnesses discussed in the Motion clearly satisfy these requirements and are well-qualified based on this rule.

Jennifer Yaek, Defendants' expert accident reconstructionist, has Bachelor's and Master's degrees in mechanical engineering and a Master's degree in Biomedical Engineering. She is a registered professional engineer in the states of Michigan, Alabama and Mississippi, who has participated in many accident reconstruction continuing education courses, including certification as both an airbag crash data retrieval technician and analyst. Over the past 19 years, she has reconstructed on the order of 1,000 motor vehicle accidents, and has been qualified and admitted to testify regarding accident reconstruction and vehicle dynamics in both state and federal courts. (Motion, pp. 4-5)

William Van Arsdell is Defendants' airbag expert. Dr. Van Arsdell has a Ph.D. in Mechanical Engineering from MIT, and Bachelor's and Master's degrees in Mechanical Engineering. He has extensive experience evaluating the performance of seat belts, airbags, child restraint systems, and the crashworthiness of motor vehicles, having conducted over one hundred full scale vehicle crash tests and sled tests, investigated hundreds of motor vehicle accidents, and conducted research in occupant protection, occupant kinematics, accident reconstruction, and mechanics. (Motion, p. 15)

Karl Stopschinski is Defendants' expert on the vehicle's electronic throttle and braking systems. Mr. Stopschinski has a Bachelor's degree in Electrical Engineering, and has extensive experience evaluating the performance of electronic and other systems in motor vehicles. He has

conducted hundreds of inspections similar to the inspection performed on the subject vehicle, and has investigated hundreds of motor vehicle accidents. (Motion, p. 19)

At several points in his Opposition, Plaintiff tries to challenge the qualifications of Defendants' expert witnesses. *See, e.g.,* Opposition ¶¶ 20, 22, 33-35. Plaintiff's allegations miss the mark, and have no impact on the witnesses' qualifications. For example, Plaintiff claims that the expert witnesses are unqualified because they had no involvement in the design of the 2011 Toyota Camry, and are not "certified Toyota engineers," or Toyota employees. *Id.* at ¶¶ 20, 22 and 33. Any lack of direct involvement in the design of the particular vehicle at issue, or lack of certification by Toyota, does not mean that the expert witnesses are not otherwise qualified by knowledge, skill, education or experience to offer expert opinion testimony at trial. Nor would failure to submit "certificates of calibration" or "Government approval or certification" for their equipment, *id.* at ¶ 34, or copies of "U.S. Federal and Virginia State issued licenses." *Id.* at ¶ 35.

Plaintiff also claims that the "testing" of the subject vehicle was done "in an environment under conditions which do not match the actual surrounding or conditions that were presented to the subject vehicle during the subject accident." *Id.* at ¶ 23. However, Plaintiff does not specify what "testing" he is referring to, or why the fact that the vehicle inspection took place in and around a Toyota dealership's facility somehow renders Defendants' expert witnesses' opinions inadmissible at trial. The expert witnesses' reports, which were provided to Plaintiff as required by the Scheduling Order, set out the results of the experts' inspections, and how those results form the bases for the witnesses' opinions. See e.g., Motion Ex. 9 (Van Arsdell); Motion Ex. 11 (Stopschinski). This evidence clearly demonstrates the validly of the data gathered by Defendants' experts and the solid bases for their opinions.

**Conclusion**

Defendants' Motion, the foregoing discussion, and Virginia and Federal law, including the Fourth Circuit's holding in *Wilder, supra.*, applying Virginia law to affirm the district court's grant of summary judgment, make it clear that Plaintiff's "conjecture and speculation" in his Opposition, fails to offer any credible evidence of a defect in the subject vehicle, let alone a defect that existed when it left Defendants' hands.  Therefore, summary judgment should be granted on all claims in this case.

/s/ Joel A. Dewey
Joel A. Dewey
Virginia Bar # 37319
Paul J. Day (admitted *pro hac vice*)
*Attorneys for Defendants Toyota Motor Sales, U.S.A., Inc., Toyota Motor Manufacturing Kentucky, Inc. and Toyota Motor Engineering & Manufacturing North America, Inc.*
DLA Piper LLP (US)
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000
(410) 580-3001 (facsimile)
*joel.dewey@dlapiper.com*
*paul.day@dlapiper.com*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of June, 2015, a copy of Defendants' Reply in Support of Motion for Summary Judgment was served, first class postage prepaid, on:

    Satyajit Sanyal
    11654 Plaza America Drive, #622
    Reston, Virginia 20190

    *Pro Se Plaintiff*

    /s/ Joel A. Dewey
    Joel A. Dewey
    Virginia Bar # 37319
    Paul J. Day (admitted *pro hac vice*)
    *Attorneys for Defendants Toyota Motor Sales, U.S.A., Inc., Toyota Motor Manufacturing Kentucky, Inc. and Toyota Motor Engineering & Manufacturing North America, Inc.*
    DLA Piper LLP (US)
    The Marbury Building
    6225 Smith Avenue
    Baltimore, Maryland 21209
    (410) 580-3000
    (410) 580-3001 (facsimile)
    *joel.dewey@dlapiper.com*
    *paul.day@dlapiper.com*