IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

SATYAJIT SANYAL,          )
                                 )
     Plaintiff,        )
                                 )
       v.          )     1:14cv960 (JCC/TCB)
                                 )
TOYOTA MOTOR NORTH AMERICA,   )
INC. *et al.*,              )
                                 )
     Defendants.      )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor Manufacturing, Kentucky, Inc., and Toyota Motor Sales, U.S.A., Inc.'s ("Defendants") Motion for Summary Judgment. [Dkt. 41.]  For the following reasons, the Court will grant the motion.

### I. Background

On July 10, 2012 *pro se* plaintiff Satyajit Sanyal ("Plaintiff" or "Sanyal") was involved in a single-vehicle accident while driving his 2011 Toyota Camry.  (Am. Compl. [Dkt. 15] ¶ 3.)  Sanyal crashed head-on into a tree and the airbags did not deploy.  (*Id.*)  Data collected from the Camry's airbag electronic control unit ("ECU") shows the Camry had no accelerator pedal application and no brake pedal application for

1

4.3 seconds prior to the crash. (Defs.' Mem. in Supp. [Dkt. 42] at 8; *see also* Defs.' Mem. in Supp., Jennifer Yaek Aff. (Ex. 7) ¶ 7.) The ECU shows the Camry was traveling between 13.7 and 16.2 miles per hour in the 4.3 seconds before impact, and that the Camry was traveling at 13.7 miles per hour when the Camry hit the tree.[1] (Defs.' Mem. in Supp. at 8; Yaek Aff. ¶ 8.)

When emergency assistance arrived at the scene of the accident, it appeared Sanyal had lost consciousness. (Defs.' Mem. in Supp. [Dkt. 42], Ex. 1, at 5.) Sanyal was transported to Reston Hospital Center via ambulance. (*Id.*) At the hospital, the treating physician noted that Sanyal "reportedly had a seizure" while driving. (Defs.' Mem. in Supp., Ex. 2, at 1.) During the seizure, Sanyal bit his tongue and struck his upper lip "presumably on [the] steering wheel." (*Id.*) Sanyal told emergency room personnel that he did not remember the

---

[1] Sanyal claims that the relevant accident data from the ECU is actually TRG3, the most recent recorded event, not TRG2, the next most recent recorded event that Yaek and Defendants' other experts identify as the subject crash. (*See generally* Pl.'s Opp'n [Dkt. 49] at 10.) However, according to Yaek, "the most recent event in time recorded relative to the imaged data was the rear impact event described by Plaintiff in his March 27, 2015 deposition." (Yaek Aff. ¶ 5.) In his deposition, Sanyal testified that in April 2013, another car hit his Camry from behind. (Defs.' Mem. in Supp., Ex. 6, at 8.) The recorded crash event that preceded the April 2013 accident is the accident at issue here. (Yaek Aff. ¶ 5.) Though Sanyal questions whether TGR2 actually corresponds to the subject accident, he puts forward no evidence that refutes Yaek's sequence of recorded crash events, and in fact appears to admit through his own testimony that TGR2 is the data relevant to the July 10, 2012 crash.

accident.[2]  (Defs.' Mem. in Supp. at 7; Pl.'s Opp'n to Defs.'

Joint Stipulation of Uncontested Facts [Dkt. 45] at 5.)[3]  Prior

to discharge, Sanyal became "unconscious and unresponsive" for

the third time that day, and "he clearly had another seizure."

(Defs.' Mem. in Supp., Ex. 2, at 1.)  Based on the frequency of

seizures and the fact that Sanyal lives alone, the treating

physician decided to admit Sanyal to the hospital for anti-

epileptic medications and neurological observation.  (*Id.*)

       A neurologist examined Sanyal.  The neurologist noted

that Sanyal has a history of seizures.  (Defs.' Mem. in Supp.,

Ex. 3, at 1.)  In the consultation report, the neurologist

stated that Sanyal's level of carbamazepine, an anti-seizure

---

[2] Sanyal notes he was "transported in a state of unconsciousness"
to the hospital.  (Pl.'s Opp'n to Defs.' Joint Stipulation of
Uncontested Facts [Dkt. 45] at 5.)  He denies making the
statement.  (*Id.*)

[3] In an attempt to comply with the Court's directive for the
parties to submit a joint statement of uncontested facts in
advance of the final pretrial conference, defense counsel
reached out to Sanyal.  Counsel provided a draft copy of
proposed uncontested facts.  [Dkt. 46.]  Sanyal did not respond
directly to the letter.  Instead, he filed an opposition to the
proposed statement of facts.  (*See* Pl.'s Opp'n to Defs.' Joint
Stipulation of Uncontested Facts.)  He attached this opposition
as Exhibit 2 to his opposition to Defendants' motion for summary
judgment.  (*See* Pl.'s Opp'n, Ex. 2.)  As a *pro se* litigant,
Sanyal is entitled to a liberal construction of his pleadings.
*Graham v. Geneva Enters., Inc.*, 55 F. App'x 135, 135 (4th Cir.
2003) (citations and internal quotation marks omitted).
Therefore, the Court construes Sanyal's opposition to the joint
stipulation of uncontested facts as his challenge to Defendants'
statement of material facts, as Defendants have incorporated
many of those facts into their argument in support of summary
judgment.

medication that Sanyal was taking, was "sub-therapeutic." (*Id.*)
Like the treating physician, the neurologist noted that Sanyal
remembered going to work and driving to a meeting and then
waking up with emergency personnel surrounding him.[4] (*Id.*)

Sanyal was seen by a consulting physician.  That
physician also noted Sanyal had a history of seizures.  (Defs.'
Mem. in Supp., Ex. 4, at 1.)  The consulting physician noted
that Sanyal had contusions around his face, scalp, and a lot of
swelling around his eyes.  (*Id.*)  The consulting physician made
a "presumed diagnosis" of post-traumatic epilepsy with
breakthrough seizures "resulting in [a] motor vehicle accident
with further episodes witnessed in the ER." (*Id.* at 3.)  The
consulting physician noted that Sanyal was on a "very low dose"
of anti-seizure medication.  (*Id.*)

Sanyal originally filed this action on July 30, 2014
in the Circuit Court for Fairfax County, naming Toyota Motor
North America, Inc. ("TMA"), Toyota Motor Manufacturing
California, Inc. ("TMMCA"), Toyota Motor Sales, Inc., Toyota
Manufacturing Kentucky, Inc., and Toyota Motor Engineering &
Manufacturing North America, Inc. as Defendants.  (Notice of

---

[4] Sanyal notes that he was provided a heavy dosage of anti-
seizure medication at the hospital.  (Pl.'s Opp'n to Defs.'
Joint Stipulation of Uncontested Facts at 8.)  Such medications
are known to cause drowsiness and impede alertness.  (*Id.*)  He
does not recall making such statements to the neurologist and he
denies making such a statement.  (*Id.*)

Removal [Dkt. 1] ¶ 1.)  All five defendants removed the case to this Court shortly after service on the basis of diversity jurisdiction.  (*Id.* ¶¶ 2-17.)  Defendants then filed a motion requesting a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) [Dkt. 8], which this Court granted. (9/30/14 Order [Dkt. 14].)  Sanyal was given leave to amend his complaint.  (*Id.*)  He did so, alleging: negligence in the design and manufacture of his Camry ("Count 1"); strict liability for the defective design and manufacture of the Camry, plus failure to warn of danger and failure to adequately inspect and test the Camry ("Count 2"); breach of express and implied warranties of merchantability ("Count 3"); "causation and damages" ("Count Four"); and "wanton, reckless, malicious or intentionally wrongful conduct in gross disregard for others' rights" ("Count 5").  (Am. Compl. ¶¶ 36-40.)  Sanyal seeks damages in the amount of $25,000,000.00.  (*Id.* ¶ 41.)

     All five defendants moved to dismiss Counts Two and Four, which the Court granted.  (*See* 1/15/15 Mem. Op. [Dkt. 27] at 8.)  Additionally, the Court granted TMMCA and TMA's motions for summary judgment and dismissed them from the case.  (*Id.*)

     After conducting discovery, the remaining three defendants filed the instant motion for summary judgment. Defendants argue they are entitled to summary judgment on all of Sanyal's claims for two reasons.  First, Sanyal has no expert

witnesses to testify at trial, and therefore has no evidence that his Camry was defective at the time of the accident or at the time it left Defendants' possession. (Defs.' Mem. in Supp. at 1-2.) Second, Sanyal's lack of expert witnesses leaves him without a qualified witness to testify that the alleged defects in the Camry caused his injuries. (*Id.* at 2.) Sanyal opposes the motion. (*See generally* Pl.'s Opp'n) Having been fully briefed and argued, this motion is ripe for disposition.

## II. Legal Standard

Summary judgment is appropriate only where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party always bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *see also Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 299 (4th Cir. 2012) (stating the opposing party must "come forward with specific facts showing that there is a genuine issue for trial."). Importantly, the

6

non-moving party must show more than some metaphysical doubt as to the material facts.  "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'"  *Hughes v. Bedsole,* 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986)).

In reviewing the record on summary judgment, the Court "must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant."  *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson,* 477 U.S. at 249.  Where there is conflicting evidence, the court must credit the evidence of both sides and acknowledge that there is a genuine issue of material fact that cannot be resolved by summary judgment.  *See Tolan v. Cotton*, 134 S. Ct. 1861, 1868-69 (2014) (stating that summary judgment is inappropriate where each side has put forward competent evidence that raises a dispute about a material fact).

### III. Analysis

Defendants argue they are entitled to summary judgment because Sanyal cannot prove that his Camry was defective or that any alleged defect caused his injuries.  Each will be addressed in turn.

### A. Proof of Defect

Under Virginia law, "[t]he standard of safety of goods imposed on the seller or manufacturer is essentially the same whether the theory of liability is labeled warranty or negligence."  *Garrett v. I.R. Witzer Co., Inc.*, 518 S.E.2d 635, 637 (Va. 1999) (citation and internal quotation marks omitted).  "Under either the warranty theory or the negligence theory the plaintiff must show, (1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the defendant's hands."  *Id.*

Defendants argue that Sanyal cannot show that his Camry was, in fact, defective.  (Defs.' Mem. in Supp. at 12.) First, Defendants argue that there was no malfunction in the Toyota Camry.  In support, they offer the expert report of William Van Arsdell.[5]  Dr. Van Arsdell inspected Sanyal's Camry.

---

[5] Dr. Van Arsdell has a Ph.D. in Mechanical Engineering from the Massachusetts Institute of Technology, a M.S. in Mechanical

(Defs.' Mem. in Supp., Ex. 9, at 6 [hereinafter "Van Arsdell Report"].)  Sanyal's Camry is equipped with three different airbags on the driver's side: a front airbag, a seat-mounted thorax side airbag, and roof-rail curtain airbag.  (*Id.* at 6.) The driver's front airbag, which is located in the steering wheel, is not meant to deploy in every frontal crash.  (*Id.* at 7.)  Airbags are designed to deploy when the risk of injury from an accident outweighs the potential for injury from the airbag itself.  (*Id.*)

Experts have different methods of discussing the deployment thresholds of front airbags, including barrier equivalent velocity (BEV) and delta-V.  (*Id.*)  Data supplied by Toyota indicates that the no-deploy threshold of the Camry is 11.1 miles per hour BEV with a must-deploy threshold of 16.2 miles per hour BEV.  (*Id.*)  Toyota ran a deployment confirmation

---

Engineering from the University of Illinois at Urbana-Champaign, and a B.S. in Mechanical Engineering from the University of Arizona.  (Defs.' Mem. in Supp. at 15; Defs.' Mem. in Supp., Ex. 10, ¶ [hereinafter Van Arsdell Aff.].)  He has conducted over one hundred full-scale vehicle crash tests and sled tests. (Defs.' Mem. in Supp. at 15; Van Arsdell Aff. ¶3.)  He has investigated hundreds of motor vehicle accidents.  (*Id.*)  His research focuses on occupant protection, occupant kinematics, accident reconstruction, mechanics, material selection, and the deformation, fatigue and fracture of materials.  (*Id.*)  Sanyal challenges Dr. Van Arsdell's qualifications as an expert because Dr. Van Arsdell is not a Toyota employee and therefore is not knowledgeable about his Camry. (Pl.'s Opp'n at 10.) Additionally, Dr. Van Arsdell was hired by Defendants and therefore cannot be impartial.  (*Id.*)  The Court finds that Dr. Van Arsdell possesses the requisite credentials to be certified as an expert in this matter.

test at 16.6 miles per hour BEV that resulted in a delta-V of
18.8 miles per hour. (*Id.*) At the time of Sanyal's accident,
data from the ECU shows a delta-V of 15.4 miles per hour. (*Id.*
at 6.) Therefore, Dr. Van Arsdell concluded that the delta-V
was within the Camry's "gray zone," meaning that it was above
the no-deploy threshold but not high enough that the airbag had
to deploy. (*Id.*)

Ultimately, Dr. Van Arsdell made the following
conclusions: there is no evidence that the Camry seatbelt
assembly or airbag system malfunctioned during Sanyal's crash;
the seatbelt assemblies and the airbag system are not defective
in design, the deformation of the vehicle as pictured in
Sanyal's photos is not indicative in and of itself of an
accident severe enough to warrant airbag deployment, and the
delta-V and BEV from Sanyal's accident are within the gray zone
of the Camry's front airbag system, such that an airbag
deployment would not necessarily be expected. (*Id.* at 9.) Dr.
Van Arsdell also concluded that Sanyal's Camry complied with
federal safety regulations. (*Id.*)

Sanyal does not offer any competing expert testimony,[6]
but rather proposes two reasons as to why the airbags are

_____

[6] At the motion hearing, Sanyal represented that he was qualified
as an expert, apparently both to discuss the Camry's design and
to discuss causation, which the Court addresses *infra*. While he
listed himself as a witness on his exhibit list, he did not

defective.  First, in his deposition, Sanyal testified that

according to an NHTSA publication, front airbags should deploy

between eight and fourteen miles per hour.  (Defs.' Mem. in

Supp., Ex. 6, at 242 [hereinafter "Sanyal Dep."].)

Additionally, Sanyal pointed to the Camry's safety manual, which

states that the front airbags are designed to deploy at twelve

to eighteen miles per hour.  (*Id.* at 242-43.)  Sanyal believes

that based on the discrepancy between the National Highway

Traffic Safety Administration ("NHTSA") numbers and the numbers

in the Camry's safety manual, his Camry is defective.  (*Id.* at

243-44.)  As Dr. Van Arsdell states, which Sanyal does not

provide any evidence to dispute, there is considerable variation

---

identify himself as an expert.  (Sanyal's Exhibit List [Dkt.
53].)  Additionally, during his deposition, Sanyal testified
that he was not an expert and did not intend to present himself
as an expert witness at trial.  (Defs.' Mem. in Supp., Ex. 6, at
260.)  When questioned by defense counsel, Sanyal testified that
he was not an expert in any areas relevant to determining this
motion.  (*Id.* at 31-35, 219, 260, 289.)  Because he did not
disclose himself as an expert witness on his witness list, as
required by this Court, and in light of the tension between his
deposition testimony and his representations before the Court at
the motion hearing, the Court declines to consider Sanyal as an
expert witness in this case.  *See Lee v. Wal-Mart Stores, Inc.*,
No. 3:10cv367-DWD, 2011 WL 796784 at *4 (E.D. Va. Mar. 1, 2011)
("Because the newly described conversation appears only in [*pro
se* plaintiff's brief in opposition], and is, therefore, not
appropriately a part of the record for the Court's
consideration, the Court may not consider it in resolving the
motion for summary judgment."); *see also Holloway ex rel. Estate
of Holloway v. The City of Suffolk, VA*, 660 F. Supp. 2d 693, 697
(E.D. Va. 2009) ("The plaintiffs, however, may not create an
issue of fact by submitting an affidavit that is inconsistent
with their prior deposition testimony.").

in the frontal airbag deployments from one vehicle to another. (Van Arsdell Report at 7.)  Ultimately, the NHTSA defers to manufacturers to determine the proper deployment levels for their airbags.  (*Id.* at 8 (citing Denial of Defect Petition – 2008 Toyota Corolla Airbags 76 C.F.R. 51120 (2011)).)  Thus, as Dr. Van Arsdell reported, the Camry's front airbags were designed consistent with sound engineering and industry practice.  (*Id.*)

Second, Sanyal argues that the owner's manual indicates that the airbags were supposed to deploy in a crash between twelve and eighteen miles per hour, and as he was traveling within that range, the airbags should have deployed. Sanyal attached two pages from the owners' manual to his opposition to summary judgment.  The first page, titled "SRS Airbags" states, "The SRS airbags inflate when the vehicle is subjected to certain types of severe impacts that may cause significant injury to the occupants." (Pl.'s Opp'n, Ex. 8, at 2.)  Nowhere on the two pages cited by Sanyal does the owners' manual provide a range of speed at which the airbag should deploy.  The owners' manual, which is couched in "broad generalities," coupled with Sanyal's hazy recollection of the accident, is not enough to create a triable issue of fact in the absence of expert testimony. *See Piltch v. Ford Motor Co.*, 778 F.3d 628, 633 (7th Cir. 2015) (stating that owners' manual and

plaintiffs' testimony about the accident, which was the only testimony about the accident, did not move the defect claim out of the realm of speculation and thus summary judgment for defendant was appropriate).

Sanyal also testified that one of his Camry's alleged defects is the inappropriate design and placement of crash sensors, causing the airbags to fail to deploy. (Sanyal Dep. at 244-45.) His basis for that conclusion is the photographs from the safety manual and "common sense based on [his] personal feelings." (*Id.* at 245-47.) However, as Sanyal himself admitted, he is not an expert in the field of sensing and/or occupant restraints. (*Id.* at 30-34.) As issues surrounding defective design of airbags are "beyond the ken of the average layman," Sanyal is not qualified to testify on this issue as a lay witness. *See Wood v. Toyota Motor Corp.*, 760 A.2d 315, 319 (Md. Ct. Spec. App. 2000) (citation and internal quotation marks omitted).[7] Nor has Sanyal identified an expert who will testify as to this defect at trial. As the Court noted earlier, Sanyal himself cannot be considered an expert witness in this matter.

---

[7] Sanyal seems to acknowledge that determining whether defects in his Camry caused his accident is best-suited for analysis by expert witnesses. (Pl.'s Opp'n at 4 ("The very fact it took several expert witnesses for the defendants to test the subject vehicle in an attempt to defend the Plaintiff's claims, [sic] is a clear indication of the nature of complexity involved in investigating the reported accident event and the claimed defects.").)

Even if he could, however, his opinion is not based on sufficient facts or data, nor is it the product of reliable principles and methods as required by Federal Rule of Evidence 702.  Rather, the basis for Sanyal's opinion is his personal belief that the sensors are defective.  Therefore, he cannot meet his burden under Rule 56 or E.D. Va. Local Rule 56 to point to specific parts of the record that refute Defendants' evidence, and as such Dr. Van Arsdell's statement that the airbag system was working properly is deemed admitted.  *See* Fed. R. Civ. P. 56(c)(1)(A) (stating the nonmoving party "must support [its] assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]"); *see also* E.D. Va. Local Rule 56(B) ("A brief in response to [a motion for summary judgment] shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated *and citing parts of the record relied upon to support the facts alleged to be in dispute*.") (emphasis added).

Even assuming that Sanyal had refuted Defendants' competent evidence that there was not a design defect in his

14

Camry, thus creating a genuine issue of material fact sufficient to warrant trial by jury, summary judgment is still appropriate. Sanyal does not have any admissible evidence to meet his burden of proof at trial.  Under Virginia law, the mere fact of an accident does not establish the negligence of either the manufacturer or seller of the product and does not establish that the product was defective.  *Logan v. Montgomery Ward & Co., Inc.*, 219 S.E.2d 685, 688 (Va. 1975).  In *Logan*, the Supreme Court of Virginia held that the plaintiff had failed to prove, directly or inferentially, that her injuries from her gas range exploding were the result of any defect in the range.  *Id.* at 687.  The plaintiff had no expert evidence on the manufacture, operation, or installation of gas ranges and did not have the gas range itself.  *Id.*  "What caused the gas leak was not testified to by any witness.  We can find nothing in the record which permits us to infer that under all the circumstances, the leak must have been caused by a defect in the oven unit of the range which existed when it was transferred from [defendant's] possession to that of [plaintiff's]."  *Id.* at 687-88.  "[W]hile there may be a suspicion that the explosion did occur because of such defect, we are unable to discover any proof of a defect, or any reason for a mechanical malfunction of the stove."  *Id.* at 688.  Thus, in *Logan*, the Supreme Court of Virginia rejected res ipsa loquitor, "the thing speaks for itself," in products

15

liability cases.  *See Wilder v. Toyota Motor Sales, U.S.A., Inc.*, 23 F. App'x 155, 157 (4th Cir. 2001) (interpreting *Logan* as rejecting res ipsa loquitur in products liability cases).

Here, Sanyal has proffered the following evidence to support his case: his own testimony about his recollection of the accident and what he believes to be design defects in his Camry; police and hospital records from the accident; various news articles about Toyota recalls; and safety information from his Camry owners' manual and the NHTSA.  (*See generally* Pls.' Opp'n [Dkt. 49] at 3.)  He has no expert evidence to show that a defect in his Camry made it unreasonably dangerous, or that such a defect existed when the Camry left Defendants' possession. "[T]here is no *per se* rule requiring expert testimony about the specific defect in products liability cases, and in some cases, circumstantial evidence alone may be used to establish product liability in Virginia." *Wilder*, 23 F. App'x at 157.  However, without specific evidence of a defect, Sanyal can defeat summary judgment "only if his evidence tends to eliminate all reasonable possibilities that some other party or cause is to blame for the accident, or if the facts are such that no other inference but the existence of a defect . . . is reasonable." *Id.* (citations and internal quotation marks omitted).  Defendants have given a reasonable alternative explanation as to why the front airbag did not deploy – Sanyal's car, which complied with federal

safety standards, was not traveling fast enough for the front airbag to *have* to deploy.  Sanyal has failed to refute this alternative explanation for the defect, and as such summary judgment is appropriate.  *See Wilder*, 23 F. App'x at 156-57 (upholding summary judgment where plaintiff had failed to offer any evidence as to how or when the alleged dangerous condition in the airbag system came into existence).

During the course of litigation, Sanyal appears to have alleged an additional defect not mentioned in the complaint.  (*See generally* Pl.'s Opp'n at 12-13.)  Sanyal alleges that the Camry experienced an unintended acceleration which caused the crash.  (Pl.'s Opp'n at 12.)  Because this defect was not alleged in the complaint, the Court declines to consider it.  *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 15 (describing the procedure to amend a complaint).

However, to the extent that such a defect could be gleaned from the face of the complaint, summary judgment is still appropriate.  Sanyal has not offered any evidence to show that his Camry experienced unintended acceleration or that such a defect existed when the Camry left Defendants' possession. (*See* Sanyal Dep. at 236-239 (stating his belief that his Camry

17

experienced unintended acceleration was based on news reports and the NHTSA investigation).)  Furthermore, Defendants have proffered the expert report of Karl Stopchinski ("Stopchinski"). Stopchinksi's report contains the following conclusions: (1) a malfunction of the electronic throttle control system was not the cause of the loss of control.  Absent application of the accelerator pedal by the driver, the vehicle would not accelerate; (2) a malfunction of the cruise control system was not the cause of the loss of control of the car; (3) there were no vehicle conditions that existed in the Camry that would cause acceleration of the vehicle without the driver pressing the accelerator pedal; (4) entrapment of the accelerator pedal by the floor mat was not the cause of the crash; (5) a slowly returning accelerator pedal was not the cause of the crash; (6) the brake and throttle systems are separate systems, such that use of one will not cause the malfunction of the other; and (7) application of the brakes in the Camry will prevent the vehicle from accelerating and will cause it to decelerate even with the throttle held fully open.  (Defs.' Mem. in Supp., Ex. 11, at 2-3.)  As before, Sanyal has no competing expert testimony and has not put forward any circumstantial evidence that "tends to eliminate all reasonable possibilities that some other party or cause is to blame for the accident." *Wilder*, 23 F. App'x at

18

157. Therefore, summary judgment for Defendants is appropriate
on the alleged unintended acceleration defect.[8]

## B. Proof of Causation

A plaintiff must show a causal connection between the
defect and his alleged injuries. *See, e.g.*, *Hartwell v. Danek
Med., Inc.*, 47 F. Supp. 2d 703, 707 (W.D. Va. 1999). "'The law
of products liability in Virginia does not permit recovery where
responsibility is conjectural.'" *Id.* (citing *Boyle v. United
Techs. Corp.*, 792 F.2d 413, 415 (4th Cir. 1986)). To succeed on
a products liability claim, the plaintiff must demonstrate that
a product defect is the only reasonable explanation or cause of
the complained-of injury. *Id.* (citing *Boyle*, 792 F.2d at 416).

Even if Sanyal could establish a prima facie case of a
defect and that such a defect existed at the time his Camry left
Defendants' possession, summary judgment for Defendants is still
appropriate because Sanyal cannot show that his injuries were
caused by any alleged defects in his Camry. Sanyal does not
dispute that prior to the accident, he had a history of
seizures. He maintains that the claims in this lawsuit are for
aggravation of his seizures. (Pl.'s Opp'n at 8.) "Plaintiff's
medical history reports prior to the subject accident do not

---

[8] Stopchinksi's report notes that according to the Toyota
Technical Information System, Sanyal's Camry has not been
involved in any Toyota Service Campaigns. (Defs.' Mem. in
Supp., Ex. 11, at 6.)

19

contain any Doctors [sic] observations of multiple back-to-back seizures spanned within several hours, which was clearly observed and reported in the Reston Hospital records from the subject accident event." (*Id.*)

However, Sanyal does not demonstrate that the crash is the *only* reasonable explanation for his back-to-back seizures. In fact, the medical records cited by Sanyal state that level of anti-seizure medication Sanyal was taking was "sub-therapeutic," meaning less than optimal to address his seizures.  This is one possible alternative explanation as to why he suffered several seizures in one day, though certainly not the only explanation. Beyond the fact that Sanyal was involved in the accident and then soon thereafter experienced multiple seizures, Sanyal provides no additional evidence linking the accident to the increased frequency of seizures.  "Proving cause by an expert in a products liability action is not mandatory under Virginia law; however, in a products liability action, proof of causation must ordinarily be supported by expert testimony because of the complexity of the causation facts." *Gauthreaux v. United States*, 694 F. Supp. 2d 460, 465 (E.D. Va. 2009) (citation and internal quotation marks omitted).  Correlation does not equal causation.  This Court cannot infer that the increase in seizures after the accident means that the accident caused the increased frequency of seizures.  *See id.* (stating plaintiff's

claim failed because there was an absence of proof regarding the technical subject matter of whether the design and manufacture of the forklift caused plaintiff's accident); *see also Piltch*, 778 F.3d at 634 (stating that "without expert testimony, a lay juror could not distinguish between the injuries caused by the collision and the enhanced injuries caused by the airbags' failure to deploy without engaging in pure speculation.").

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' motion.  Sanyal will have thirty days from the date of this Memorandum Opinion and accompanying Order to notice his appeal.  An appropriate order will issue.

|  | /s/ |
| --- | --- |
| June 11, 2015 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |